### COSULICH SOCIETA TRIESTINA DI NAVIGAZIONE v. ELTING, Collector of Customs.

### No. 45.

Circuit Court of Appeals, Second Circuit.
April 3, 1933.

George Z. Medalie, U. S. Atty., of New York City (George B. Schoonmaker, Asst. U. S. Atty., of New York City, of counsel), for defendant-appellant.

John M. Lyons, of New York City (Mark E. Cymrot, of New York City, of counsel), for plaintiff-appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The plaintiff steamship company brought to New York a passenger named Dos Santos, a native of Portugal, who had a re-entry permit issued by the Department of Labor. The alien had been originally admitted to the country in 1920 and left September 23, 1924, for a temporary visit abroad. He returned before the expiration of the absence allowed under his re-entry permit. Upon examination before a Board of Special Inquiry he admitted that he was unable to read. He was thereupon ordered deported by reason of that defect. A penalty of $1,000 plus payment of $92 return passage money of Dos Santos was imposed upon the plaintiff steamship company for bringing to a port of the United States an illiterate alien contrary to the provisions of section 3 of the act of 1917 (8 USCA § 136) and without exercising reasonable precaution to detect the disability.

The alien was at no time able to read, and was apparently originally admitted in 1920 through fraud.

The plaintiff paid under protest the penalties imposed, and brought action to recover them back.

It is contended that, because the alien presented himself for passage with a valid re-entry permit, the steamship company was justified in bringing him to the United States. Section 10(f) of the Immigration Act of 1924 (8 USCA § 210(f), however, provides that: "A permit issued under this section shall have no effect under the immigration laws, except to show that the alien to whom it is issued is returning from a temporary visit abroad; but nothing in this section shall be construed as making such permit the exclusive means of establishing that the alien is so returning." It is apparent from section 10(f) that the permit issued in respect to Dos Santos went no farther than to show prima facie that he was returning from a temporary visit abroad, and did not justify the inference that he would have the right to enter the country. All objections to admission, except the one that he had been out of the country for the permitted time, might be raised at the port of entry even without proof by the government that he was not a returning alien. Many illiterate aliens have been lawfully admitted to the United States originally who are not permitted to re-enter a second time, unless they are then able to read. Yet such persons when they leave for a temporary stay, may be furnished with re-entry permits. These permits merely facilitate proof of previous lawful entry and of the temporary character of a visit abroad.

Section 3 of the Immigration Act (8 US CA § 136) provides for the exclusion of "all aliens over sixteen years of age, physically capable of reading, who cannot read the English language, or some other language or dialect, including Hebrew or Yiddish." Therefore aliens presenting a return permit who have reached the age of 16 years between the date of their first and their second entry are subject to a literacy test. The same thing is true of aliens who had relatives who were citizens of the United States at the time of original entry but who had lost these relatives prior to the time of the second entry. Likewise aliens who sought admission to avoid religious persecution on the first entry but did not seek admission for that purpose at the time of second entry would also be subject to the literacy test. The re-entry permit is not a substitute for a literacy test. Ex parte Di Stephano (D. C.) 25 F.(2d) 902; Ex parte Rodriguez (D. C.) 15 F.(2d) 878.

Section 9 of the Immigration Act of 1917, as amended by section 26 of the Immigration Act of 1924, imposes a fine upon any transportation company that brings to any port of the United States an alien who is excluded by section 3 of the act because unable to read, if it shall appear to the satisfaction of the Secretary of Labor that this disability might have been detected by the exercise of reasonable precaution prior to the departure of the alien from the foreign port, unless such alien is exempted from the excluding provisions of the section. The alien Dos Santos was subject to a literacy test upon his second attempt to enter the country, and was in an excluded class because he personally admitted that he could not read any language. The steamship company made no attempt to find out whether he could read before it took him on board, and relied on the return permit which threw no light on the matter. Under these circumstances the Secretary of Labor was authorized in finding that the disability might have been detected by the exercise of reasonable precaution prior to the departure of the alien, and the penalties were lawfully imposed upon the steamship company. The right of the alien to apply for entry did not relieve the steamship company from diligence in discovering whether he was subject to a disability which rendered him excludable. North German Lloyd v. Elting (C. C. A.) 48 F.(2d) 547, at page 550; Elting v. North German Lloyd, 287 U. S. 324, 53 S. Ct. 164, 77 L. Ed. ——. Accordingly the fine in the Dos Santos Case was lawfully imposed.

The alien referred to in the second cause of action was Gennarino Miglio who had a French passport issued at Genoa and viséed by the American consul there on June 13, 1924, with the notation, "Good for entry in the United States under existing laws before July 1, 1924; place of birth—Algiers; No. 1811." This alien was excluded because he was unable to read, and after he had admitted that he was unable to read (fol. 254). It is contended that the steamship company was justified in relying on the consular visé. Section 2(g) of the Immigration Act of 1924 (8 USCA § 202(g), provides that "Nothing in this subchapter shall be construed to entitle an immigrant, to whom an immigration visa has been issued, to enter the United States, if, upon arrival in the United States, he is found to be inadmissible to the United States under the immigration laws." We held in North German Lloyd v. Elting, 48 F.(2d)

547, at page 550, that the issuance of an immigration visé not only availed the alien nothing if he was found to be inadmissible upon arrival, but also that it in no way relieved the steamship company of the obligation to make its own examination. See Lamport & Holt, Ltd., v. Elting, 64 F.(2d) 93, handed down herewith. Accordingly the fine in the Miglio proceeding was lawfully imposed, and no case was made justifying a recovery by the steamship company.

Judgment reversed as to the first and second causes of action.