INTERNATIONAL MERCANTILE MARINE
CO. v. ELTING, Collector of Customs.
No. 16.

Circuit Court of Appeals, Second Circuit.
Dec. 4, 1933.

George Z. Medalie, U. S. Atty., of New York City (George B. Schoonmaker, Asst. U. S. Atty., of New York City, of counsel), for appellant.

Roger O'Donnell, of Washington, D. C., for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The appellee is engaged in the transportation of passengers from Europe to this coun-

try. On September 22, 1924, it brought to the port of New York an alien mentioned in the first cause of action of the complaint, who had in his possession a nonquota visa. He had resided previously in the United States from November, 1918, until July, 1924, but he had never been lawfully admitted to this country. He frankly stated to the Board of Special Inquiry that he came as a seaman and had never been examined by the immigration officer for permanent admission. He was excluded on his second arrival because he was a quota immigrant. The appellee was notified, and filed a protest in which it claimed that it was not charged by statute with responsibility for the irregularity of the first entry of the alien. It submitted no evidence to show what examination or investigation it had made to ascertain whether the alien was a nonquota immigrant, as indicated by his visa.

Section 4 (b) of the Immigration Act of 1924 (8 U. S. C. § 204 (b), 8 USCA § 204 (b), provides that a person is a nonquota immigrant who previously has been lawfully admitted to the United States and who is returning from a temporary visit abroad. The Secretary of Labor ruled that the appellee was responsible for failing to use reasonable diligence to ascertain whether the alien previously had been lawfully admitted to the United States, and imposed a fine pursuant to section 16 of the act of 1924 (8 U. S. C. § 216, 8 USCA § 216). The fine was lawfully imposed. Lloyd Sabaudo Societa v. Elting, 287 U. S. 329, 340–341, 53 S. Ct. 167, 77 L. Ed. 341.; Hamburg-American Line v. Elting, 65 F.(2d) 369 (C. C. A. 2); Cosulich Societa Triestina v. Elting, 64 F.(2d) 95 (C. C. A. 2). Lawfully admitted means lawfully admitted for permanent residence. U. S. ex rel. Stapf v. Corsi, 287 U. S. 129, 133, 53 S. Ct. 40, 77 L. Ed. 215; U. S. ex rel. Georgas v. Day, 43 F.(2d) 917 (C. C. A. 2). Under these circumstances, since the facts are admitted, it was error to grant judgment for the plaintiff on the first cause of action.

The third cause of action involved two aliens, mother and child, brought to the port of New York July 30, 1924, in possession of a Bulgarian passport with a notation thereon that the child was born in Bulgaria and that the adult alien claimed to have left the United States in April, 1924, and that it was issued in lieu of a nonquota immigration visa. Thus it was indicated that the visa was issued pursuant to the Immigration Act of 1924. The mother entered as a temporary visitor for six months in November, 1923. In February, 1924, she married a citizen of the United States and left with him, in April, 1924, for the purpose of bringing to this country her son by a former marriage, who is the child here in question. Both aliens were excluded on the ground that they were quota immigrants with nonquota visas. The appellee was fined with respect to each alien. It protested, alleging that the mother had told its agent and the United States consul that she had been previously admitted for permanent residence. It contended that the adult alien had been lawfully admitted pursuant to section 4 (b) of the Immigration Act of 1924 and was therefore a nonquota immigrant even though she had been admitted only for a temporary visit, and also urged lawful admission under section 4 (a) (8 U. S. Code, § 204 (a), 8 USCA § 204 (a). Section 4 (a) provides: "An immigrant who is the unmarried child under eighteen years of age, or the wife, of a citizen of the United States who resides therein at the time of the filing of a petition under section 9 [section 209 of this title]"—is a nonquota immigrant. And, in the case of the child, the appellee claimed that the stepchild of a citizen of the United States was a child of such citizen within the meaning of section 4 (a) of the same act and therefore a nonquota immigrant. The Secretary of Labor disagreed and imposed a fine, holding that the appellee did not submit any evidence to show what diligence it had exercised, if any, to ascertain if the aliens were nonquota immigrants as specified in their visas.

Subdivision (m) of section 28 of the act (8 U. S. Code, § 224 (l), 8 USCA § 224 (l), provides that, as used in the act, "The terms 'child,' 'father,' and 'mother,' do not include a child or parent by adoption unless the adoption took place before January 1, 1924." It is argued by the appellee that, because adopted children were expressly excluded from the nonquota class defined in section 4 (a), stepchildren were included by implication. The appellant contends that a stepchild is a quota immigrant so far as section 4 (a) is concerned. The appellee argues that the mother was a nonquota immigrant because she was the wife of a citizen of the United States, but this is erroneous, because no petition has been filed under section 4 (a) and section 9 of the 1924 act (8 U. S. Code, §§ 204 (a), 209, 8 USCA §§ 204 (a), 209). For the same reason the younger alien could not be a nonquota immigrant, assuming that section 4 (a) included stepchildren. The Secretary of Labor held that the appellee, on the evidence, could have ascertained by a reasonable inquiry that both were quota immigrants.

■ Section 4 (a) and section 9 of the act gave a privilege to citizens of this country to bring here without delay their wives and children, members of their immediate family, but Congress restricted that privilege. Even adopted children were denied the benefits thereof unless the adoption had been effected about six months prior to the enactment of the act. If Congress did not intend to place adopted children in the nonquota group, it did not intend, we think, so to place stepchildren who in the eyes of the law, have fewer rights and privileges in the stepfather's family than adopted children. Moreover, section 4 (a) was amended in 1928 and 1932 (45 Stat. 1009, § 2; 47 Stat. 656, § 1, 8 USCA § 204 (a), and now reads: "An immigrant who is the unmarried child under twenty-one years of age, or the wife, or the husband, of a citizen of the United States: Provided, That the marriage shall have occurred prior to issuance of visa and, in the case of husbands of citizens, prior to July 1, 1932."

Thus the interpretation placed on this section by the Department of Labor previously was given approval. The practice of the Department has the support of the regulations of the Department of State, issued under section 24 of the 1924 Immigration Act (8 U. S. Code, § 222, 8 USCA § 222). This practical construction gives weight to the Department's interpretation of the statute. Lloyd Royal Belge v. Elting, 61 F.(2d) 745 (C. C. A. 2). In Cutter v. Doughty, 23 Wend. 513, the court said, page 521: "No question is made that the words children and grandchildren cannot of themselves mean such by marriage, but only by blood—as the word father, when used in a statute, means a father by blood, not a step-father." See, also, Newark Paving Co. v. Klotz, 85 N. J. Law, 432, 91 A. 91; Hummel v. Supreme Conclave I. O. H., 256 Pa. 164, 100 A. 589.

We think that Congress did not intend to include stepchildren in the nonquota class by section 4 (a) of the 1924 Immigration Act.

■ Nor was the appellee reasonably diligent in seeking information and learning the status of the immigrants. There was nothing in the visas to lead the appellee to believe them to have been issued under section 4 (a), and, if doubt existed, the appellee could and should have made inquiry of the consul. Then it would have learned that the aliens were not nonquota immigrants. Lloyd Sabaudo Societa v. Elting, 287 U. S. 329, 53 S. Ct. 167, 77 L. Ed. 341. The fine was properly imposed as to these items, and the recovery should have been disallowed.

■ On July 15, 1924, the appellee brought here the alien, the subject of the fourth cause of action, an infant 7 weeks old, who had never been in this country. He was accompanied by his mother, who had previously resided here. Both parents were citizens of France. The consul issued to the alien a nonquota visa as a returning resident. The appellee was fined for bringing in a quota immigrant with a nonquota visa. The Secretary of Labor held that reasonable diligence would have ascertained the true facts and that the respondent was liable for the fine. The Secretary refused to remit the fine, although the appellee asserted that it did not know or could not have ascertained by reasonable diligence that this child had never been in the United States. Not having been here, it was a quota immigrant. The mother made no effort to conceal any of the facts when questioned on her arrival, and presumably told the same story to the appellee's agents. The appellee says that the visa was sufficient protection. This contention has been rejected. Elting v. North German Lloyd, 287 U. S. 324, 53 S. Ct. 164, 77 L. Ed. 337; Lloyd Sabaudo Societa v. Elting, supra. A recovery of the fine was erroneously allowed.

■ The sixth and seventh causes of action concern two brothers who were brought here on March 4, 1925. Each had a visa issued under section 4 (b) of the 1924 Immigration Act. The elder claimed to have been in the United States from 1912 to 1915 and from 1916 until February, 1923. The younger claimed to have been here from 1912 to 1914 and also from 1920 to February, 1923. Each claimed that he had left the United States in February, 1923, to see a sick father and in order to marry, and both claimed they intended to return to this country within six months. The elder remained in Italy and purchased a meat market; the younger remained because he said he had been in business with his brother and had to take care of the business because his brother was sick. He claimed an investment in his brother's meat market. The market was started in October, 1923, and sold in July, 1924. Both declared they had property and money in the United States. Before they returned to Italy in 1923, they sold such property as they had here. The elder arrived in 1916 as a seaman, having signed for a round trip in Italy and then deserted. He had not presented himself to any immigration officer to have his residence in this country legalized. Both aliens were excluded because they were held to be quota immi-

grants with nonquota visas. When notified of the facts, the appellee submitted a protest stating that the aliens had presented documentary proof that they had resided in the United States; that the younger presented an affidavit, executed before he left the United States in 1923, showing his intention to go to Italy temporarily and thereafter return to the United States; that the elder possessed a deed to some property in Michigan. Appellee also presented a declaration of each alien prior to his embarkation. The Secretary of Labor pointed out that they had disposed of their property in the United States and that they had purchased a business in Italy after they reached there, and rightfully claimed that the appellee could have ascertained the true facts had it exercised reasonable diligence. He held that they were not temporary visitors abroad, but had relinquished their domicile in this country.

They were clearly quota immigrants, although they had formerly resided in this country. They had given up their domiciles here and were not returning from a temporary visit abroad. U. S. ex rel. Lesto v. Day, 21 F.(2d) 307 (C. C. A. 2). The aliens having been absent from the United States for two years and having married in Italy, any effort made by inquiry would have ascertained whether the aliens had retained their domicile in the United States. The only evidence of diligence on the part of the appellee was the inquiry as to the declarations which the immigrants filed. Indeed, the elder brother had never legalized his entry in 1916. The fines here were properly imposed, and that part of the judgment which includes their fines should be reversed.

It follows that the judgment should be reversed, since in each of these causes of action this appeal has been prosecuted.

Judgment reversed.