# Matter of Andres GUZMAN-GOMEZ, Respondent

File A076 692 898 - San Diego, California

*Decided May 8, 2009*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  The terms "child" and "parent" defined at section 101(c) of the Immigration and Nationality Act, 8 U.S.C. § 1101(c) (2006), do not encompass stepchildren and stepparents.

(2)  A person born outside the United States cannot derive United States citizenship under section 320(a) of the Act, 8 U.S.C. § 1431(a) (2006), by virtue of his or her relationship to a nonadoptive stepparent.

FOR RESPONDENT:  Thomas A. Lappin, Esquire, San Diego, California

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Kerri Harlin, Assistant Chief Counsel

BEFORE:  Board Panel: FILPPU, COLE, and PAULEY, Board Members.

FILPPU, Board Member:

In a decision dated November 24, 2008, an Immigration Judge ordered the respondent removed from the United States pursuant to sections 237(a)(2)(A)(i) and (iii) of the Immigration and Nationality Act, 8 U.S.C. §§ 1227(a)(2)(A)(i) and (iii) (2006).  The respondent has appealed from that decision, arguing that the proceedings should be terminated because he is a United States citizen.  The Department of Homeland Security ("DHS") opposes the appeal.  The appeal will be dismissed.

The respondent was born in Mexico in July 1986.  In February 2000, when he was 13 years old, the respondent was admitted to the United States as a lawful permanent resident, apparently on the basis of an immediate relative petition filed by his mother's husband, a United States citizen by birth who married the respondent's mother in 1994.  After his admission to the United States, the respondent evidently resided with his mother and stepfather in California, although no explicit evidence was presented on that point. The sole issue on appeal is whether the respondent automatically derived United States

citizenship through his stepfather pursuant to section 320(a) of the Act, 8 U.S.C. § 1431(a) (2006).[1] We agree with the Immigration Judge that he did not.

Section 320 of the Act provides as follows, in its entirety:

> Children Born Outside the United States and Residing Permanently in the United States; Conditions Under Which Citizenship Automatically Acquired
>
> (a) A child born outside of the United States automatically becomes a citizen of the United States when all of the following conditions have been fulfilled:
> (1) At least one parent of the child is a citizen of the United States, whether by birth or naturalization.
> (2) The child is under the age of eighteen years.
> (3) The child is residing in the United States in the legal and physical custody of the citizen parent pursuant to a lawful admission for permanent residence.
> (b) Subsection (a) of this section shall apply to a child adopted by a United States citizen parent if the child satisfies the requirements applicable to adopted children under section 101(b)(1).[2]

The respondent was not adopted by his mother's husband, so section 320(b) of the Act is inapplicable. Furthermore, the respondent's mother did not become a United States citizen before his 18th birthday. Thus, if the respondent derived United States citizenship at all under section 320(a) of the Act, he did so through his stepfather.

Because the respondent was born abroad, he is presumed to be an alien and must come forward with the evidence to prove his citizenship claim. *Matter of Hines*, 24 I&N Dec. 544, 546 (BIA 2008). To establish derivative United States citizenship under section 320(a) of the Act, the respondent must prove that he qualifies as the "child" of his United States citizen stepfather and that his stepfather qualifies as his "parent." Furthermore, if the respondent satisfies that threshold requirement, he must also prove that he resided in his stepfather's "legal and physical custody" after being admitted as a lawful permanent resident in February 2000. Section 320(a)(3) of the Act.

---

[1] On December 22, 2004, the respondent was convicted of second-degree robbery in violation of section 212.5(c) of the California Penal Code and was sentenced to a term of imprisonment of 2 years. There is no dispute that this conviction renders the respondent removable if he is an alien.

[2] Section 320 was enacted in its current form pursuant to section 101(a) of the Child Citizenship Act of 2000, Pub. L. No. 106-395, 114 Stat. 1631, 1631, and applies to individuals who satisfied all of its requirements on or after February 27, 2001. *Id.* § 104, 114 Stat. at 1633; *see also Matter of Rodriguez-Tejedor*, 23 I&N Dec. 153 (BIA 2001).

For purposes of section 320(a), the terms "child" and "parent" are defined by section 101(c) of the Act, 8 U.S.C. § 1101(c) (2006), which provides as follows:

> As used in title III–
>     (1) The term "child" means an unmarried person under twenty-one years of age and includes a child legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in the United States or elsewhere, and, except as otherwise provided in sections 320 and 321 of title III, a child adopted in the United States, if such legitimation or adoption takes place before the child reaches the age of 16 years (except to the extent that the child is described in subparagraph (E)(ii) or (F)(ii) of subsection (b)(1), and the child is in the legal custody of the legitimating or adopting parent or parents at the time of such legitimation or adoption.
>     (2) The terms "parent", "father", and "mother" include in the case of a posthumous child a deceased parent, father, and mother.

Obviously, the respondent is not his stepfather's biological child. Moreover, as previously noted, he was never adopted by his stepfather. Nor has any evidence been submitted to suggest that the respondent was born out of wedlock in Mexico, such that he could have been "legitimated" by his stepfather under the law of Mexico or California.[3] Thus, the question we must decide is whether the terms "child" and "parent," as defined in section 101(c) of the Act, encompass stepchildren and stepparents. For the reasons that follow, we conclude that they do not.

At the outset, the plain language of section 101(c), viewed in isolation, is silent and therefore ambiguous as to whether it embraces the "stepchild-stepparent" relationship. In such cases, where Congress's intent is not plainly expressed, it is our obligation to fill the statutory gap by adopting

---

[3] The United States Court of Appeals for the Ninth Circuit has held that a child can acquire citizenship at birth through a person who is neither a biological nor an adoptive parent if that person was legally married to one of the child's biological parents at the time of the birth. *Solis-Espinoza v. Gonzales*, 401 F.3d 1090 (9th Cir. 2005); *Scales v. INS*, 232 F.3d 1159 (9th Cir. 2000). We have no occasion to opine as to the merits of these precedents, which arose in the context of "acquired citizenship," rather than "derivative citizenship," at issue here. We note, however, that the statutes being construed in those cases, sections 301 and 309(a) of the Act, 8 U.S.C. §§ 1401 and 1409(a) (2000), do not employ the statutory term "child." In any event, it is sufficient for present purposes to observe that the respondent's stepfather was *not* married to the respondent's mother at the time of the respondent's birth. *Martinez-Madera v. Holder*, 559 F.3d 937 (9th Cir. 2009) (distinguishing *Solis-Espinoza* and *Scales* where the citizen stepparent was not married to one of the child's biological parents at the time of his birth).

a reasonable interpretation of the language in question. *Negusie v. Holder*, 129 S. Ct. 1159, 1163-64, 1167-68 (2009); *Matter of Nwozuzu*, 24 I&N Dec. 609, 612 (BIA 2008). To be reasonable, our interpretation must take into account the language and design of the Immigration and Nationality Act as a whole, because the meaning of an ambiguous term may only become evident when placed in its broader statutory context. *National Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644 (2007) (citing *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000)).

With the foregoing principles in mind, we begin by observing that the terms "child" and "parent" bear different meanings in citizenship cases than they do in other cases arising under the Act. Specifically, section 101(c) defines those terms in citizenship cases, while section 101(b) defines them for all other purposes, such as those involving the allocation of visas or the establishment of eligibility for certain forms of relief from removal that require a showing of hardship to a "child." Notably, section 101(b)(1)(B) specifically defines the term "child" to include "a *stepchild*, whether or not born out of wedlock, provided the child had not reached the age of eighteen years at the time the marriage creating the status of stepchild occurred." (Emphasis added.) Further, section 101(b)(2) defines a "parent" to include a stepparent, since the status of stepparent "exists by reason of any of the circumstances" that make one a "child" under section 101(b)(1). Yet such an explicit reference to stepchildren and stepparents is notably absent from section 101(c) of the Act.

The foregoing comparison of sections 101(b) and (c) shows that when Congress wants the term "child" to encompass stepchildren for some purpose under the Act, it knows how to make its intention clear in that regard. *Cf. Matter of Briones*, 24 I&N Dec. 355, 368 (BIA 2007). Furthermore, it is well established that a negative inference may reasonably be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute. *Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006). As the United States Supreme Court has stated, "'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). We see no reason why this presumption should not apply here. Indeed, the legislative history of sections 101(b) and (c) contain substantial evidence that Congress deliberately defined the term "child" to encompass stepchildren for visa allocation purposes, *but not* for purposes of derivative citizenship.

As to stepchildren, the definitions in sections 101(b) and (c) of the Act find their origin in the Immigration and Nationality Act of 1952, Pub. L. No. 82-414, 66 Stat. 163. Prior to the 1952 Act, a stepchild was not considered a

"child" under the immigration law for either derivative citizenship or visa allocation purposes. S. Rep. No. 81-1515, at 707 (1950) ("Stepchildren do not derive citizenship through the naturalization of a stepparent."); *Int'l Mercantile Marine Co. v. Elting*, 67 F.2d 886, 888 (2d Cir. 1933) (holding that a stepchild could not be admitted as an immigrant by virtue of his relationship to his stepfather); *Weedin v. Mon Hin*, 4 F.2d 533, 534 (9th Cir. 1925) (same); *see also* Margaret M. Mahoney, *Stepfamilies in the Federal Law*, 48 U. Pitt. L. Rev. 491, 514-34 (Winter 1987) (discussing the evolution of the treatment of stepchildren under the immigration laws).[4]

In April 1950, a Senate subcommittee that was charged with the task of examining the immigration system and making recommendations for its improvement issued a comprehensive report discussing, among other things, how children (including stepchildren) had historically been treated under the immigration law. S. Rep. No. 81-1515, at 467-68, 706-09. The subcommittee report noted at the outset that stepchildren had traditionally been ineligible under our laws to obtain visas or derivative citizenship through their stepparents. *Id*. at 468, 707. In the visa context, the subcommittee recommended that the law be liberalized to grant "nonquota status" (roughly the equivalent of "immediate relative" status under current law) to some stepchildren of United States citizens. *Id*. at 468. When it came to derivative citizenship, however, the subcommittee affirmatively disclaimed any intention to change the existing law, which then provided that "[s]tepchildren do not derive citizenship through the naturalization of a stepparent." *Id*. at 707; *see also id.* at 712-13.

---

[4] *See* Nationality Act of 1940, ch. 876, § 102(h), 54 Stat. 1137, 1138; Immigration Act of 1924, ch. 190, § 28(m), 43 Stat. 153, 169. Between 1855 and 1922, the general rule was that an alien woman who was herself eligible for naturalization acquired United States citizenship automatically upon her marriage to a United States citizen. *See* Act of February 10, 1855, ch. 71, § 2, 10 Stat. 604; *see also Kelly v. Owen*, 74 U.S. 496, 498 & n.2 (1868). In turn, the minor children of such a woman would derive United States citizenship automatically through their mother—whether they were related to her new husband or not—pursuant to the Act of April 14, 1802, ch. 28, 2 Stat. 155, which stated in relevant part that the children of naturalized citizens were to be treated as citizens themselves. *In re Roberston*, 179 F. 131, 132 (D.C. Pa. 1910); *United States ex rel. Fisher v. Rodgers*, 144 F. 711, 712 (D.C. Pa. 1906); *United States v. Kellar*, 13 F. 82, 84-85 (C.C. Ill. 1882). Thus, in some sense these children could be viewed as having derived citizenship through their United States citizen stepfathers, albeit at several removes. However, the law that conferred automatic citizenship on the alien wives of United States citizens was repealed in 1922. *See* Act of September 22, 1922, ch. 411, 42 Stat. 1021. Consequently, after that date the children of such women ceased to derive citizenship, by extension, through their stepfathers. *See* S. Rep. No. 81-1515, at 707.

Like the Supreme Court, we consider S. Rep. No. 81-1515 to be a valuable historical resource for understanding the meaning of the 1952 Act. *See, e.g.*, *United States v. Mendoza-Lopez*, 481 U.S. 828, 835 n.10 (1987); *Saxbe v. Bustos*, 419 U.S. 65, 78 (1974); *United States v. Menasche*, 348 U.S. 528, 531 (1955). The report is of particular value in this case, because the definitions of the term "child" ultimately embodied in sections 101(b) and (c) of the 1952 Act appear to have sprung quite directly from the subcommittee's recommendations.

Finally, we observe that the DHS's United States Citizenship and Immigration Services ("USCIS") has formally taken the position that stepchildren cannot derive United States citizenship through their stepparents under section 320(a) of the Act. *See* USCIS, DHS, Adjudicator's Field Manual, ch. 71.1(b) & app. 71-7 (2007), *available at* http://www.westlaw.com (find by citation to "FIM-ADJFMAN 71.1" and "FIM-ADJFMAN APP 71-7"); *see also* Letter of Rosalina Lacot, Acting Director, Business Process and Re-engineering, INS Immigration Services Division, Dep't of Justice, to Mr. Alan Lee (Aug. 8, 2001), *reprinted in* 78 Interpreter Releases, No. 32, Aug. 20, 2001, app. III, at 1350, 1370. DHS memoranda and internal guidance do not have the force and effect of law in removal proceedings, but the policies contained in such memoranda can be adopted by the Board when appropriate. *Matter of M/V Saru Meru*, 20 I&N Dec. 592, 595-96 (BIA 1992) (citing *Matter of Cavazos*, 17 I&N Dec. 215 (BIA 1980)).

In light of the foregoing, we agree with the Immigration Judge that an alien cannot demonstrate derivative citizenship under section 320(a) of the Act through a nonadoptive stepparent.[5] Consequently, the respondent has failed to rebut the presumption of alienage that arises by virtue of his foreign birth, and the DHS has satisfied its burden of proving that the respondent is an "alien." The respondent is therefore subject to the jurisdiction of the Immigration Court and this Board. He has made no argument on appeal as to the validity of the charges of removability. Nor has he requested any form of relief from removal. Accordingly, the respondent's appeal will be dismissed.

**ORDER:** The appeal is dismissed.

---

[5] In view of this fact, we have no occasion to decide whether the respondent was in his stepfather's "legal and physical custody" after being admitted as a lawful permanent resident, as required by section 320(a)(3) of the Act.