PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

     *Plaintiff-Appellee,*

v.

GHULAM NABI SARWARI,

     *Defendant-Appellant.*

No. 10-4944

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(1:10-cr-00099-GBL-1)

Argued: December 7, 2011

Decided: February 9, 2012

Before TRAXLER, Chief Judge, and MOTZ and KEENAN,
Circuit Judges.

---

Affirmed by published opinion. Judge Motz wrote the opinion, in which Chief Judge Traxler and Judge Keenan joined.

---

## COUNSEL

**ARGUED:** Helen Eckert Phillips, MCGLOTHLIN AND PHILLIPS, PPLC, Lebanon, Virginia, for Appellant. Justin Gelfand, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Neil H. Mac-

Bride, United States Attorney, Gene Rossi, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

---

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

On behalf of his three stepsons, Ghulam Nabi Sarwari prepared, signed, and submitted applications for United States passports. On each application, Sarwari listed himself as the child's "father," when in fact, Sarwari is neither the birth father nor the adopted father of any of the children. A jury convicted Sarwari of three counts of willfully and knowingly making a false statement on a passport application, in violation of 18 U.S.C. § 1542. Sarwari appeals. For the reasons that follow, we affirm.

I.

Born in Afghanistan in 1960, Sarwari entered the United States in 1991 after successfully applying for political asylum. In 1992, Sarwari married Parveen and gave his last name to her and her four children, J.A.S., W.A.S., N.A.S., and N.S.C. Parveen and the children were born outside of the United States and lived in Pakistan for the first years of her marriage to Sarwari. Parveen's first husband and the children's biological father, Zalami Attai, died in Afghanistan prior to the marriage of Sarwari and Parveen.

In 1998, Sarwari became a naturalized United States citizen and, in 1999, filed I-130, Petition for Alien Relative forms on behalf of Parveen and the children in order to bring them to the United States. The United States Citizenship and Immigration Services approved the petitions and Parveen and the children legally entered the United States in 1999 to live with Sarwari in Stafford, Virginia.

In 2004, Sarwari prepared, signed, and submitted United States passport applications on behalf of J.A.S., W.A.S., and N.A.S.[1] The passport application instructions do not define the term "father." The instructions do state, however, that United States passports are issued only to United States citizens or nationals, and directs applicants born outside of the United States to submit certain documents as proof of the applicant's United States citizenship. An applicant born outside of the United States, claiming United States citizenship through the naturalization of a parent, must submit (1) his foreign birth certificate, (2) proof of his admission to the United States for permanent residence, and (3) his United States citizen parent's naturalization certificate.

On the passport applications, Sarwari wrote his name in box 14, labeled "Father's Full Name," and signed his name in box 21, labeled "Father's/Legal Guardian's Signature." With the applications, Sarwari also submitted birth certificates that he obtained from the Embassy of Afghanistan naming him the "father" of the children. The United States Department of State then issued United States passports to J.A.S., W.A.S., and N.A.S.

In March 2010, a federal grand jury indicted Sarwari on three counts of willfully and knowingly making a false statement on a passport application in violation of 18 U.S.C. § 1542. The indictment charges Sarwari with three counts of "falsely stat[ing] in a passport application . . . that he was [the applicant's] father when, in fact, Sarwari knew that statement to be false." Prior to trial, Sarwari moved to dismiss the indictment, contending that his answers on the forms were "literally true" and thus he did not violate 18 U.S.C. § 1542 as a matter of law. The district court denied the motion.

---

[1]Sarwari also applied for a passport on behalf of his stepdaughter, N.S.C., but the Government, for reasons unexplained in the record, did not charge Sarwari with violating § 1542 with respect to that application.

At trial, an adjudication officer at the Department of Homeland Security's Citizenship and Immigration Services testified that, in her experience, no country would allow a stepfather, as opposed to a biological father, to be considered a "father" on a birth certificate. A special agent with the Department of State's Diplomatic Security Services similarly testified, without contradiction, that a non-adopted stepchild of a naturalized citizen is not eligible to receive a United States passport. The Government also presented evidence that Sarwari worked as a linguist for the Department of State translating Pashto and Dari into English, and in that capacity, was expected to know the meaning and nuance of English words.

Two of Sarwari's stepchildren and Sarwari himself testified that he loved his stepchildren, supported them, considered them to be his children, and that they, in turn, loved him and considered him to be their father. Sarwari further testified that he paid for his stepchildren to come to the United States, provided for their daily needs, helped them with their homework, and taught them to speak English. Sarwari acknowledged that he knew he was not the biological father of his stepchildren and that he knew the children's original birth certificates listed their biological father, Zalami Attai, as their father. He admitted that nevertheless he obtained from the Embassy of Afghanistan birth certificates naming him as the children's "father" in order to secure United States passports for the children. Sarwari explained that a United States passport officer instructed him to obtain birth certificates for the children from the Embassy. He further testified that he believed his stepchildren were United States citizens because of his own status as a citizen.

The Government cross-examined Sarwari regarding two documents he submitted subsequent to the 2004 passport applications. In 2006, Sarwari completed a Standard Form 86 for security clearance purposes relating to his job as a Department of State translator in which he identified his stepchildren as his "children" even though the form gave Sarwari a choice

between identifying them as "stepchildren" and "children." In 2009, Sarwari completed a N-600, Application for Certificate of Citizenship, for one of the stepchildren and checked a box which read: "I am a U.S. citizen parent applying for a Certificate of Citizenship on behalf of my minor (under 18 years) BIOLOGICAL child." Form N-600, Application for Certificate of Citizenship (rev. 01/08/09), at 1 (emphasis in original).

At the conclusion of the Government's case, Sarwari moved pursuant to Rule 29 for a judgment of acquittal. He asserted that the Government produced insufficient evidence that he had made a false statement on the passport applications. The district court denied the motion.

During the charge conference, Sarwari requested that the district court instruct the jury as to the lack of a definition of the word "father" in the statutes and regulations governing passport applications. The district court denied the motion. The district court did, however, instruct the jury that good faith constituted a complete defense to the crimes charged against Sarwari.

The jury returned a verdict of guilty on all three counts. Following the verdict, Sarwari renewed his motion for a judgment of acquittal and moved for a new trial. The district court denied both motions and sentenced Sarwari to three concurrent terms of twelve months and one day in prison.

Sarwari timely filed this appeal.

## II.

Relying on *Bronston v. United States*, 409 U.S. 352 (1973), Sarwari initially argues that his answers on the passport applications were "literally true," and therefore his convictions cannot stand as a matter of law.[2]

---

[2]As the Government notes, whether the *Bronston* literal truth defense applies to § 1542 offenses "is an open question," which apparently has not

In *Bronston*, the Supreme Court held that an individual cannot be convicted of perjury when the allegedly false statement was "literally true but not responsive to the question asked and arguably misleading by negative implication." 409 U.S. at 353. The Government charged Bronston with perjury based on his allegedly intentionally misleading answer to an unambiguous question in a bankruptcy proceeding:

> Q.   Do you have any bank accounts in Swiss banks, Mr. Bronston?
>
> A.   No, sir.
>
> Q.   Have you ever?
>
> A.   The company had an account there for about six months, in Zurich.

*Id.* at 354. In fact, Bronston had held a personal bank account in Zurich, although the negative implication of his answer suggested that he had not. The Supreme Court reversed his conviction, emphasizing that a perjury conviction is a "drastic sanction," and identifying "a serious literal problem" in basing a violation of a statute that criminalizes "willfully . . . stat[ing] . . . any material matter that [a defendant] does not believe to be true" on a statement that is literally true, even if non-responsive or misleading. *Id.* at 357-58.

We and our sister circuits have, on occasion, applied *Bronston* to reverse a conviction based on a literally true answer. For example, in *United States v. Good*, 326 F.3d 589, 591-92 (4th Cir. 2003), we reversed a false statement conviction

yet been addressed by any court. *See* Gov't Br. at 20. Given our conclusion that the facts of this case do not permit Sarwari to invoke a *Bronston* defense, we need not resolve the question as to whether it is available in § 1542 prosecutions.

because the defendant's negative response to a question on a security badge application as to whether she had been convicted of "Burglary, Theft, Armed robbery, Possession or Distribution of Stolen Property . . . [,] Dishonesty, Fraud, or Misrepresentation" was "literally true." Although the defendant had been convicted of embezzlement, Virginia law treated embezzlement as a distinct offense, which "was not one of the crimes listed on the application." *Id.* at 591-92 & 592 n.5. We therefore concluded that the defendant's answers were "literally true" within the meaning of *Bronston*. Similarly, in *United States v. Hairston*, 46 F.3d 361, 375-76 (4th Cir. 1995), we reversed a conviction when context made it "obvious" that the defendant used the word "prepare" in a particular manner and so her answer was literally true. And, in *United States v. Earp*, 812 F.2d 917, 918-20 (4th Cir. 1987), we reversed a conviction when the defendant's answer to a question—had he ever burned crosses at the residences of interracial couples—was literally true, though arguably intended to mislead given that the defendant had stood watch with a shotgun while others tried and failed to light the cross. *See also United States v. Serafini*, 167 F.3d 812, 823-24 (3d Cir. 1999) (sustaining dismissal of indictment on *Bronston* grounds); *United States v. Reveron Martinez*, 836 F.2d 684, 690-91 (1st Cir. 1988) (reversing conviction on *Bronston* grounds); *United States v. Larranaga*, 787 F.2d 489, 497 (10th Cir. 1986) (same).

But the *Bronston* literal truth defense is a narrow one. It applies only where a defendant's allegedly false statements "were *undisputedly* literally true." *United States v. Thomas*, 612 F.3d 1107, 1115 (9th Cir. 2010); *see also United States v. Strohm*, ___ F.3d ____, 2011 WL 5346069, at *9 (10th Cir. Nov. 8, 2011); *United States v. Boskic*, 545 F.3d 69, 92 (1st Cir. 2008); *United States v. Lighte*, 782 F.2d 367, 374 (2d Cir. 1985); *United States v. Bell*, 623 F.2d 1132, 1136 (5th Cir. 1980); *United States v. Slawik*, 548 F.2d 75, 86 (3d Cir.

1977); *United States v. Paolicelli*, 505 F.2d 971, 973 (4th Cir. 1974).[3]

Thus, *Bronston*'s literal truth defense does not apply in cases in which "the focus is on the ambiguity of the question asked." *Boskic*, 545 F.3d at 92. Nor does it apply to "an answer [that] would be true on one construction of an arguably ambiguous question but false on another." *Slawik*, 548 F.2d at 86. For these reasons, Sarwari's claim to the *Bronston* literal truth defense must fail. The truth or falsity of Sarwari's answer—that he, the children's stepfather, was their father—depends entirely on the arguable ambiguity of the question asked. Certainly, his answer is not literally true if the question—asking for the identification of the applicant's father—refers to the applicant's birth or adoptive father. Accordingly, the district court did not err in concluding that the *Bronston* literal truth defense did not entitle Sarwari to judgment as a matter of law.

### III.

Although not precisely articulated, Sarwari's essential contention really seems to be that the question posed on the passport form was so ambiguous that his answer to it cannot be considered a crime.

The answer to a fundamentally ambiguous question may not, as a matter of law, form the basis for a false statement.

---

[3]More than thirty years ago, we suggested, in dicta, that a false statement conviction "could not stand" if a defendant's statement accords "with a reasonable construction" of the information sought. *United States v. Race*, 632 F.2d 1114, 1120 (4th Cir. 1980). But, both before and after issuing this dicta in *Race*, in other cases we interpreted *Bronston*, as our sister circuits have—to provide a defense *only* if a defendant's statement is literally true, not if simply a "reasonable construction." *See Good*, 326 F.3d at 591-92; *Earp*, 812 F.2d at 918-19; *Paolicelli*, 505 F.2d at 973. Given the clarity and narrowness of the *Bronston* defense, we must disavow the *Race* dicta.

*United States v. Farmer*, 137 F.3d 1265, 1268-69 (10th Cir. 1998); *United States v. Manapat*, 928 F.2d 1097, 1099 (11th Cir. 1991). But "[f]undamental ambiguity is the exception, not the rule." *Farmer*, 137 F.3d at 1269. A question is fundamentally ambiguous only when it "is not a phrase with a meaning about which men of ordinary intellect could agree, nor one which could be used with mutual understanding by a questioner and answerer unless it were defined at the time it were sought and offered as testimony." *Lighte*, 782 F.2d at 375 (quoting *United States v. Lattimore*, 127 F. Supp. 405, 410 (D.D.C. 1955)); *accord Farmer*, 137 F.3d at 1269. A court cannot "dismiss a charge of perjury when it is entirely reasonable to expect a defendant to have understood the terms used in the questions." *United States v. Long*, 534 F.2d 1097, 1101 (3d Cir. 1976); *see also Lighte*, 782 F.2d at 375 ("[B]ecause the words used in the question have different meanings in different situations does not make them fundamentally ambiguous.").

When a question is not "fundamentally ambiguous," but merely susceptible to multiple interpretations, and a defendant's answer is true under one understanding of the question but false under another, the fact finder determines whether the defendant knew his statement was false. *See Thomas*, 612 F.3d at 1115-16; *Farmer*, 137 F.3d at 1269; *Manapat*, 928 F.2d at 1099; *United States v. Yasak*, 884 F.2d 996, 1003 (7th Cir. 1989); *Lighte*, 782 F.2d at 367; *United States v. Williams*, 552 F.2d 226, 229 (8th Cir. 1977); *United States v. Chapin*, 515 F.2d 1274, 1280 (D.C. Cir. 1975). An appellate court's only role in this situation is to assess the sufficiency of the evidence offered to support the conviction. *See United States v. Mubayyid*, 658 F.3d 35, 63 (1st Cir. 2011) ("Where a question is only arguably ambiguous, the issue of the defendant's guilt is properly one for the jury.").

With these principles in mind, we turn to their application to Sarwari's case.

### A.

We first consider whether the word "father" is so "fundamentally ambiguous" that Sarwari's answer could not provide the basis for a false statement conviction and so entitles Sarwari to reversal as a matter of law.

The dispute between the parties can fairly be characterized as semantic. Sarwari's answer is true or false depending on the definition of "father." Sarwari is correct that the passport application form does not contain a definition of "father."[4] Moreover, the common dictionary definition of "father" can *include* "stepfather," though "stepfather" is a less common definition of "father" than a biological male parent. *See, e.g.*, Webster's Third New International Dictionary, Unabridged 828 (1993) (defining "father" as: "1 a: a man who has begotten a child . . . . 3: . . . stepfather : a male relative who assumes the rights and obligation as well as the title of a father."); Oxford English Dictionary (2d ed. 1989; online version Dec. 2011), *available at* www.oed.com/view/Entry/ 68498 (defining "father" as: "1. a. One by whom a child is or has been begotten . . . . e. Colloquially extended to include a father-in-law, stepfather, or one who adopts another as his child . . . .").

Crucially, however, "[a] defendant may not succeed on a claim of fundamental ambiguity by isolating a question from its context." *Farmer*, 137 F.3d at 1269; *see also Lighte*, 782 F.2d at 373 ("a jury need not examine isolated segments of the question and answer exchange, but may view it within the context"). Here, Sarwari listed himself as his stepchildren's

---

[4]Unquestionably, the passport application form could be clearer. *Compare* Form DS-11 at 3 (asking the applicant to list his or her "Father's Full Name"), *with* Form N-600, Application for Certificate of Citizenship, at 1 (asking the applicant to check a box titled "I am a U.S. citizen parent applying for a Certificate of Citizenship on behalf of my minor (under 18 years) BIOLOGICAL child" (emphasis in original)).

father on their applications for United States passports. Although the colloquial usage of the term "father" or "parent" may include "stepfather" or "stepparent," we do not believe that persons of "ordinary intellect," *Lighte*, 782 F.2d at 375, would believe that in this context "father" or "parent" included "stepfather" or "stepparent." *Cf. United States v. Schafrick*, 871 F.2d 300, 304 (2d Cir. 1989) (sustaining perjury conviction "even if the statements could be literally true in isolation").

The context here—an application for a United States passport—is a formal one. The passport application instructions state in capital letters that "U.S. Passports are issued only to U.S. citizens or nationals." Department of State Form DS-11 at 1 (rev. 12-2003) (emphasis added). The instructions explain that "[t]he primary purpose for soliciting the information is to *establish citizenship*, identity, and *entitlement to issuance of a U.S. Passport*." *Id.* at 4 (emphases added). Although the passport application does not explicitly define the term "father," a stepchild is not—and has never been— able to obtain derivative United States citizenship through his or her non-adoptive stepfather. *See Matter of Guzman-Gomez*, 24 I. & N. Dec. 824, 826-29 (BIA 2009).[5] And, notwithstand-

---

[5]The immigration code permits the stepchild of a citizen to obtain a *visa* by virtue of his relationship with his stepparent but does not permit the stepchild of a citizen to obtain derivative *citizenship* by virtue of his relationship with his stepparent. Thus, the immigration code defines a "child" to include a "stepchild" for visa purposes but not for citizenship purposes. *Compare* 8 U.S.C. § 1101(b)(1)(B), *with id.* § 1101(c)(1). This difference reflects a deliberate choice by Congress. *See generally Matter of Guzman-Gomez*, 24 I. & N. Dec. at 827-28. Prior to the Immigration and Nationality Act of 1952, Pub. L. No. 82-414, 66 Stat. 163, a stepchild could obtain neither a visa nor citizenship by virtue of his stepparent. *See* S. Rep. No. 81-1515, at 467-68, 706-07. In 1952, Congress loosened the requirement with respect to visas. *See* Pub. L. No. 82-414 § 101(b)(1)(B). But, Congress decided not to make the same change for citizenship and naturalization purposes. *See* S. Rep. No. 81-1515, at 712-13. Congress's further revision of the immigration code in the Child Citizenship Act of 2000,

ing Sarwari's trial testimony that he believed his stepchildren to be United States citizens because of his own citizenship, he makes no claim before us that his stepchildren were United States citizens by virtue of his status as a citizen. In this context, we see no fundamental ambiguity; the only parental relationship qualifying a child for United States citizenship is one created by birth or legal adoption. Sarwari was neither the birth father nor adopted father of his stepchildren, and therefore his citizenship did not establish derivative citizenship for his stepchildren. Thus, in the context of an application for a United States passport, we cannot conclude that the word "father" is fundamentally ambiguous.

### B.

The passport application does, however, pose a possibly ambiguous question. That is, requesting identification of a child's "father" is susceptible to a possible misunderstanding (that the term "father" includes stepfather) in which case Sarwari's statements would be true. When a defendant claims that his answer to an arguably ambiguous question is true, "'[o]ur central task is to determine whether the jury could conclude beyond a reasonable doubt that the defendant understood the question as did the government and that, so understood, the defendant's answer was false.'" *Thomas*, 612 F.3d at 1116 (quoting *United States v. Sainz*, 772 F.2d 559, 562 (9th Cir. 1985)). But, the jury is not permitted to guess as to the meaning the defendant ascribed to a question. *United States v. Martellano*, 675 F.2d 940, 946 (7th Cir. 1982). "Where a question admits of two reasonable interpretations, some evidence must show what the question meant to the

Pub. L. No. 106-395, 114 Stat. 1631, "streamline[d]" derivative citizenship for foreign-born children *adopted* by a United States citizen, H.R. Rep. No. 106-852, at 4 (2000), *reprinted in* 2000 U.S.C.C.A.N. 1499, 1500-01, but did not change the established law that a child may not obtain citizenship by virtue of a non-adoptive stepparent's citizenship.

defendant when [he] answered it." *Farmer*, 137 F.3d at 1269. As in all sufficiency of evidence inquiries, we consider the evidence in the best light for the party that prevailed at trial, here the Government. *United States v. Blair*, 661 F.3d 755, 763 (4th Cir. 2011).

In this case, the Government offered substantial evidence as to what the question posited on the passport application meant to Sarwari when he answered it. In accordance with the passport application instructions, Sarwari had to submit birth certificates for his stepchildren.[6] Because the children's original birth certificates listed their birth father as their "father," Sarwari obtained new birth certificates from the Embassy of Afghanistan that listed Sarwari as the children's father. A jury could conclude that Sarwari's procurement of the new birth certificates indicated that Sarwari knew that, in requesting the name of the "father" of the applicant, the passport application asked for the name of the birth father and he wanted to portray himself as the birth father.

Moreover, in 2009, on an Application for Certificate of Citizenship, Sarwari unequivocally stated that he was his stepson's "biological father." Similarly, in 2006 on a Standard Form 86, he indicated he was his stepchildren's "father" when presented with a choice between "father" and "stepfather." These facts offer further support for the jury's conclusion that Sarwari knowingly made a false statement in response to the passport application instruction.

---

[6]We do not consider whether the birth certificates submitted by Sarwari themselves constitute false statements. The Government has conceded that the indictment rests on Sarwari's answers in boxes 14 and 21 on the United States passport application form. We note, however, that the regulations applicable to passport applications provide that "[a]ll information and evidence submitted in connection with an application is considered part of the application." *See* 22 C.F.R. § 51.20(b). Other courts have sustained convictions based on false statements in birth certificates. *See United States v. Warszower*, 113 F.2d 100 (2d Cir. 1940), *aff'd*, 312 U.S. 342 (1941); *Duncan v. United States*, 68 F.2d 136 (9th Cir. 1933).

Given the evidence at trial, the jury could find that Sarwari, a linguist fluent in the English language, understood the context of the passport application and knew that the Department of State sought to determine whether the applicants—his stepsons—were eligible for United States citizenship and passports because their birth or adoptive father was a citizen. A jury could reasonably reject Sarwari's contention that he believed himself to be the "father" of his stepsons when applying for passports for them. The jury could instead conclude beyond a reasonable doubt that Sarwari understood the inquiry made by the passport application as the Government itself did and answered the question posed—identification of the children's father—falsely.

Thus we reject Sarwari's challenge to the sufficiency of the evidence.[7]

IV.

Finally, Sarwari contends that the district court erred when it failed to instruct the jury regarding the lack of a statutory definition of the word "father." Specifically, Sarwari requested the following instruction:

> No federal statute or regulation defines the term "father," as that term is used on the U.S. State Department passport application forms that Mr. Sarwari completed and submitted on behalf of his children in 2004.

---

[7]Sarwari's attempt to invoke the rule of lenity is unavailing. The rule of lenity applies only "where there is ambiguity *in a criminal statute*." *United States v. Bass*, 404 U.S. 336, 348 (1971) (emphasis added). Sarwari does not suggest any ambiguity in the language of § 1542 itself. In arguing for the rule of lenity, Sarwari also contends that § 1542 is impermissibly vague. *See Skilling v. United States*, 130 S. Ct. 2896, 2927 (2010). This argument also fails. A person of ordinary intelligence would understand that knowingly listing himself as the father on a child's passport application when one is not, in fact, the child's father is illegal under § 1542.

However, generally accepted dictionary definitions of the term "father" include a man who had continuous care of a child, such as an adoptive father, stepfather, or foster father, in addition to a biological father.

"We review the district court's decision to give or refuse to give a jury instruction for abuse of discretion." *United States v. Passaro*, 577 F.3d 207, 221 (4th Cir. 2009). Moreover, we review instructions in their entirety to determine whether the instructions "accurately and fairly state the controlling law." *Id.* (quoting *United States v. Rahman*, 83 F.3d 89, 92 (4th Cir. 1996)).

A court's failure to give a proposed instruction does not constitute reversible error unless it "dealt with some point in the trial so important, that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense." *Id.* at 221 (quoting *United States v. Lewis*, 53 F.3d 29, 32 (4th Cir. 1995)). Here, the district court instructed the jury that the good faith of the defendant constituted a complete defense to the crime. The court's instruction adequately prevented a conviction based on mistake, accident, or any other innocent reason for Sarwari's identification of himself as his stepchildren's "father" on the passport applications.

Accordingly, the district court did not err in refusing to give the proposed instruction.

V.

For the reasons set forth above, the judgment of the district court is

*AFFIRMED*.