# Matter of Konan Waldo DOUGLAS, Respondent

*Decided October 17, 2013*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

A child who has satisfied the statutory conditions of former section 321(a) of the Immigration and Nationality Act, 8 U.S.C. § 1432(a) (2000), before the age of 18 years has acquired United States citizenship, regardless of whether the naturalized parent acquired legal custody of the child before or after the naturalization. *Matter of Baires*, 24 I&N Dec. 467 (BIA 2008), followed. *Jordon v. Attorney General of U.S.*, 424 F.3d 320 (3d Cir. 2005), not followed.

FOR RESPONDENT: Wayne Sachs, Esquire, Philadelphia, Pennsylvania

FOR THE DEPARTMENT OF HOMELAND SECURITY: Jeffrey T. Bubier, Senior Attorney

BEFORE: Board Panel: COLE, PAULEY, and GREER, Board Members.

PAULEY, Board Member:

In a decision dated January 15, 2013, an Immigration Judge determined that the respondent did not derive United States citizenship through his mother, incorporating by reference an October 15, 2012, interim decision. The Immigration Judge also sustained the charge of removability against the respondent and ordered him removed to Jamaica. The respondent has appealed, challenging only the denial of his claim to derivative citizenship. The respondent's appeal will be sustained and the proceedings will be terminated.

## I. FACTUAL AND PROCEDURAL HISTORY

This case is governed by former section 321(a) of the Immigration and Nationality Act, 8 U.S.C. § 1432(a) (2000), which was in effect at the time relevant to the respondent's case.[1] That section described the conditions

---

[1] Former section 321 was repealed and replaced by section 320 of the Act, 8 U.S.C. § 1431 (2012), pursuant to sections 101 and 103 of the Child Citizenship Act of 2000, Pub. L. No. 106-395, 114 Stat. 1631–32 (enacted Oct. 30, 2000), which applies to

(continued . . .)

under which a child born outside the United States of alien parents automatically acquired citizenship.

The facts in this case are not in dispute.  The record reflects that the respondent was born in Jamaica on January 29, 1976, to his married parents, each of whom was a native and citizen of Jamaica.  On December 14, 1981, the respondent entered the United States as a lawful permanent resident.  The respondent's mother was naturalized on April 13, 1988.  His parents were divorced on July 25, 1990.  The respondent became 18 years old in 1994.

## II.  ANALYSIS

Former section 321(a) of the Act provided that citizenship was automatically acquired by a child born outside the United States of alien parents under the following conditions:

(1)    The naturalization of both parents; or
(2)    The naturalization of the surviving parent if one of the parents is deceased; or
(3)    *The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents* or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if
(4)    Such naturalization takes place while such child is under the age of eighteen years; and
(5)    Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause (1) of this subsection, or the parent naturalized under clause (2) or (3) of the subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.

(Emphasis added.)   We have held that a child who has satisfied the statutory conditions of former section 321(a) of the Act before the age of 18 years has acquired United States citizenship, regardless of whether the naturalized parent acquired legal custody of the child before or after the naturalization.  *Matter of Baires*, 24 I&N Dec. 467 (BIA 2008).  Under our analysis, therefore, the respondent has met the requirements for United States citizenship.

However, according to case law of the United States Court of Appeals for the Third Circuit issued prior to our decision, "a child seeking to establish derivative citizenship under § 1432(a) must prove . . . 'that his

_____

individuals who were under the age of 18 on February 27, 2001, its effective date. *See generally Matter of Guzman-Gomez*, 24 I&N Dec. 824 (BIA 2009).

[parent] was *naturalized after a legal separation* from his [other parent].'" *Jordon v. Att'y Gen. of U.S.*, 424 F.3d 320, 330 (3d Cir. 2005) (alterations in original) (quoting *Bagot v. Ashcroft*, 398 F.3d 252, 257 (3d Cir. 2005)). The respondent nevertheless argues that *Matter of Baires* should be followed in the Third Circuit.  We agree.

In *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), the Supreme Court held that where a statute is silent or ambiguous, an agency's interpretation should be given deference if it is based on a permissible construction of the statute.  The Court has also emphasized that the *Chevron* principle of deference must be applied to an agency's interpretation of ambiguous statutory provisions, even where a court has previously issued a contrary decision and believes that its construction is the better one, provided that the agency's interpretation is reasonable.  *National Cable Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005) ("A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.").

The Third Circuit, in concluding that "legal separation must occur prior to naturalization" for a child to derive citizenship in *Jordon v. Attorney General of U.S.*, 424 F.3d at 330, simply reiterated the language it had used in *Bagot*.  However, the court in *Bagot* did not address the question before us now because the sequence of the legal separation of the parents and the naturalization of one parent was not at issue.  In fact, the court stated that the case turned only on whether the father had "legal custody" of the child. *Bagot v. Ashcroft*, 398 F.3d at 257.

Before addressing that key issue of legal custody, the court summarized the requirements of former section 321(a)(3) of the Act, noting that the child must first establish that "his father was naturalized *after* a legal separation from his mother," a fact that had been conceded.  *Id.* (emphasis added).  Thus, the court was apparently paraphrasing the statute by using the word "after" as a synonym for the word "when."  However, it engaged in no analysis of the statute's use of that term in deciding the case.

The intent of Congress is presumed to be expressed by the ordinary meaning of the words used.  *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987); *Matter of Otiende*, 26 I&N Dec. 127, 128 (BIA 2013).  The word "when" is not defined in the Act and has no "plain meaning" in legal lexicon.  According to *Merriam-Webster's Collegiate Dictionary* 1341 (10th ed. 2004), "when" has various meanings in different contexts,

including "at or during which time," "while," "if," and "although." It can be used as an adverb indicating time or a conjunction indicating condition. *Id.*

The Third Circuit's judicial construction of former section 321(a)(3) in *Bagot* was not concerned with the temporal occurrence of the legal custody of the child, and there is no indication that it interpreted the statute to be unambiguous. *See In re Price*, 370 F.3d 362, 369 (3d Cir. 2004) (stating that "a provision is ambiguous when, despite a studied examination of the statutory context, the natural reading of a provision remains elusive"); *see also Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."); *Marshak v. Treadwell*, 240 F.3d 184, 192 (3d Cir. 2001). Having considered that the word "when" can have a number of different possible meanings, we conclude that the use of that term in former section 321(a)(3) is ambiguous. *See Nat'l R.R. Passenger Corp. v. Atchinson Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 473 n.27 (1985) (stating that words are "ambiguous" if they are "reasonably susceptible of different interpretations"); *Dobrek v. Phelan*, 419 F.3d 259, 264 (3d Cir. 2005); *see also Negusie v. Holder*, 555 U.S. 511, 518 (2009) (finding a provision ambiguous where it was not "clear that Congress had an intention on the precise question at issue").

As to the reasonableness of our construction of former section 321(a)(3) in *Matter of Baires*, we continue to consider our original analysis to be sound. In *Baires* we relied on a decision of the Commissioner of the former Immigration and Naturalization Service, a policy statement in a Department of State Passport Bulletin, and an interpretation of the statute in the Adjudicator's Field Manual of the U.S. Citizenship and Immigration Services. *See Matter of Baires*, 24 I&N Dec. at 469–70. Each of those sources supported the conclusion that a child may derive citizenship if the parent is awarded legal custody of the child after that parent's naturalization, as long as both actions occur before the child reaches the age of 18 years.

In reviewing this issue, we have also now examined the legislative history of the statutory provision. As originally enacted, the statute stated the following:

> That a child born without the United States of alien parents shall be deemed a citizen of the United States by virtue of the naturalization of or resumption of American citizenship by the parent: *Provided*, That such naturalization or resumption takes place during the minority of such child: *And provided further*, That the citizenship of such minor child shall begin at the time such minor child begins to reside permanently in the United States.

Act of Mar. 2, 1907, Pub. L. No. 59-193, § 5, 34 Stat. 1228, 1229.  Thus, the statute had no legal custody requirement and only provided that the naturalization must have occurred while the child was a minor.  Following its significant amendment in 1940, this provision was in the same statutory format and contained essentially the same requirements as former section 321(a)(3) of the Act.  *See* Nationality Act of 1940, Pub. L. No. 76-853, § 314, 54 Stat. 1137, 1145–46.  It was revised again in 1952 and 1978, but those amendments are not pertinent to the part of the statute we consider here.  *See* Act of Oct. 5, 1978, Pub. L. No. 95-417, § 5, 92 Stat. 917, 918; Immigration and Nationality Act, Pub. L. No. 82-414, § 321(a), 66 Stat. 163, 245 (1952).  Our review of the legislative history of each of these enactments does not reveal anything relevant to the question now before us. Furthermore, aside from the Third Circuit's opinions, we are aware of no case law that is contrary to our holding in *Matter of Baires*.

In summary, we have found nothing in the legislative history of former section 321(a)(3) of the Act or the case law interpreting it that is inconsistent with or counsels against our conclusion in *Matter of Baires*. We continue to believe that Congress' intent was to accord a child United States citizenship, regardless of whether the naturalized parent acquired legal custody of the child before or after the naturalization, so long as the statutory conditions were satisfied before the child reached the age of 18.

Since we find that former section 321(a)(3) of the Act is ambiguous and that our interpretation of it is reasonable, we respectfully decline to follow the Third Circuit's case law to the contrary and will apply our holding in *Matter of Baires* to cases arising in that circuit.  *See National Cable Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. at 982; *see also INS v. Aguirre-Aguirre*, 526 U.S. 415, 424–25 (1999).  We note that "this result will promote national unity" in the application of the statute.  *Matter of M-H-*, 26 I&N Dec. 46, 49 (BIA 2012).

In light of our disposition, we need not address the other arguments raised on appeal.  Accordingly, the respondent's appeal will be sustained and the proceedings will be terminated.

**ORDER:**  The appeal is sustained and the removal proceedings are terminated.