[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-14726; 16-14972
Non-Argument Calendar
_____

Agency No. A039-072-266


HOWARD PAUL LEVY,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petitions for Review of a Decision of the
Board of Immigration Appeals
_____

(February 22, 2018)

ON PETITION FOR REHEARING

Before ED CARNES, Chief Judge, TJOFLAT, and WILLIAM PRYOR, Circuit
Judges.

PER CURIAM:

The Court grants the petition for panel rehearing, withdraws the previous opinion published in this case on September 19, 2017, and substitutes the following opinion.

Howard Paul Levy petitions for review of the Board of Immigration Appeals' order affirming his removal from the United States. Levy is a native and citizen of Jamaica. His father acknowledged paternity at birth but never married Levy's mother. Levy's father became a lawful permanent resident of the United States in 1978, obtained full custody of Levy in 1984, and became a naturalized citizen in 1985. Levy became a lawful permanent resident of the United States in 1985 and resided with his father. Levy's mother never resided nor acquired immigration status in the United States and died in 2013.

After a jury convicted Levy for conspiracy to commit mail fraud, 18 U.S.C. § 1349, the Department of Homeland Security began proceedings to remove him from the country. The Immigration Judge sustained the removal charge. Levy moved to terminate the proceedings, contending that he is a United States citizen by way of his father's naturalization. The IJ denied his motion and Levy appealed to the BIA, which adopted and affirmed the IJ's ruling and dismissed his appeal.

Levy contends that the derivative naturalization statute at issue, former Immigration and Nationality Act § 321(a)(3), 8 U.S.C. § 1432(a)(3) (1985),[1]

---

[1] When a person claims derivative citizenship, the BIA applies the law in effect when the

violates his Fifth Amendment rights because it discriminates based on gender and legitimacy and "burden[s] his fundamental right to maintain his family unit." We review de novo constitutional challenges to the INA. 8 U.S.C. § 1252(a)(2)(D); see Cole v. U.S. Att'y Gen., 712 F.3d 517, 523 (11th Cir. 2013).

Former 8 U.S.C. § 1432(a) provides:

(a) A child born outside of the United States of alien parents, or of an alien parent and a citizen parent who has subsequently lost citizenship of the United States, becomes a citizen of the United States upon fulfillment of the following conditions:

(1) The naturalization of both parents; or

(2) The naturalization of the surviving parent if one of the parents is deceased; or

(3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if

(4) Such naturalization takes place while such child is under the age of eighteen years; and

(5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause (1) of this subsection, or the parent naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.

---

last material condition was met. In Re Rodriguez-Tejedor, 23 I&N Dec. 153, 163 (B.I.A. 2001). In this case, the BIA applied the law in effect in 1985 — when Levy's father was naturalized.

3

8 U.S.C. § 1432(a).  Levy could derive citizenship under only the first clause of § 1432(a)(3).[2]  The IJ and BIA determined that Levy did not derive citizenship because his parents never legally separated.  Id.

Levy argues that § 1432(a) unconstitutionally discriminates based on gender. According to him, if his mother instead of his father had been a United States citizen, he would derive citizenship.  Levy misreads the statute.  As a legitimated child, Levy could derive citizenship under § 1432(a) only if:  both parents are naturalized, id. § 1432(a)(1); the surviving parent is naturalized, id. § 1432(a)(2); or both parents legally separate and the one having legal custody is naturalized, id. § 1432(a)(3).  None of those conditions turns on gender.  Had the situation been reversed — if Levy's mother had become a lawful permanent resident, was naturalized, and raised him in the United States while his father remained in Jamaica — Levy still would not have derived citizenship because his parents never legally separated.  As a result, § 1432(a) does not discriminate based on gender.

Levy next argues that § 1432(a) unconstitutionally discriminates based on legitimacy.  Levy asserts that § 1432(a)(3)'s first clause violates the "concept of

---

[2] Subsection 1432(a)(1) does not apply because Levy's mother was never naturalized. Subsection 1432(a)(2) does not apply because it is conditioned on the non-naturalizing parent dying before the child turns eighteen, see id. § 1432(a)(4), and Levy's mother died after he turned eighteen.  And the second clause of § 1432(a)(3) does not apply because Levy's mother was never naturalized and his "paternity [was] established by legitimation."  See Matter of Cross, 26 I&N 485, 486 (B.I.A. 2015) (noting that under the Jamaican Status of Children Act, the paternity of a child born out of wedlock is legitimated if the father acknowledges paternity).

4

illegitimacy" relevant to the equal protection analysis:  classifications targeting children born out of wedlock.  But that clause does not distinguish between children born in wedlock and those born out of wedlock.  Instead, it distinguishes between children whose parents married and legally separated and those whose parents did not.  The clause does not require that a child be born into wedlock:  a child born out of wedlock whose parents later marry and legally separate qualifies under § 1432(a)(3).  At bottom, the classification rests on two parental choices — whether to marry and legally separate — not on an "immutable characteristic determined solely by accident of birth."  Pet. Br. at 24 (quoting Frontiero v. Richardson, 411 U.S. 677, 686, 93 S. Ct. 1764, 1770 (1973)).

Alternatively, assuming without deciding that § 1432(a)(3)'s distinction based on marital choice is a legitimacy based classification, the statute passes constitutional muster.  Legitimacy based statutory classifications usually receive intermediate scrutiny, which requires that the classification "be substantially related to an important governmental objective."  See Clark v. Jeter, 486 U.S. 456, 461, 108 S. Ct. 1910, 1914 (1988).  When reviewing equal protection challenges to immigration statutes, however, we require only a "facially legitimate and bona fide reason."  Fiallo v. Bell, 430 U.S. 787, 794, 97 S. Ct. 1473, 1480 (1977).  The Supreme Court has not decided whether that standard applies to naturalization statutes (as opposed to immigration statutes), but some of our sister circuits have

5

applied that relaxed standard to § 1432(a).  See, e.g., Johnson v. Whitehead, 647 F.3d 120, 127 (4th Cir. 2011).  We need not resolve that question because the classification at issue is substantially related to an important government interest.  See, e.g., Pierre v. Holder, 738 F.3d 39, 51–54 (2d Cir. 2013); Ayton v. Holder, 686 F.3d 331, 339 (5th Cir. 2012).  The government interest at issue is respect for parental rights, namely the "rights of an alien parent who may not wish his child to become a U.S. citizen."  Pierre, 738 F.3d at 52.

Subsection 1432(a)(2) and (3) provide for single parent derivative naturalization.  Because derivative naturalization automatically changes a child's citizenship and can effectively extinguish an alien's parental rights, see Barthelemy v. Ashcroft, 329 F.3d 1062, 1066 (9th Cir. 2003), Congress limited single parent derivative citizenship to instances where it is fair to assume the alien parent was out of the picture.  See Pierre, 738 F.3d at 53; Catwell v. U.S. Att'y Gen., 623 F.3d 199, 211 (3d Cir. 2010).  That rationale is reflected most clearly in § 1432(a)(2), where the non-naturalizing parent is deceased.  But it also animates § 1432(a)(3), both clauses of which safeguard an alien parent's rights.  The first clause, which applies to married parents, permits the naturalizing parent's rights to trump the alien parent's only when the couple is legally separated and the naturalizing parent has legal custody.  8 U.S.C. § 1432(a)(3).  The second clause, involving parents who never married, permits a naturalizing mother's rights to trump an alien

6

father's rights only when paternity is not established. Id. In both situations, it is fair to assume that the alien parent has a lesser interest in the child's citizenship.

We cannot fault Congress for conditioning single parent derivative naturalization on the naturalizing parent having legal custody of the child and legally separating from the alien parent. Legal separation is a bright line marking the disunion of a married couple, and no analogous legal event marks the disunion of an unmarried couple. Perhaps Congress could have drafted § 1432(a) to provide an avenue for derivative citizenship for children like Levy — whose paternity was established, whose unmarried parents lived separately, and whose non-custodial alien parent was out of the picture. But the Equal Protection Clause did not obligate Congress to create that avenue. See Nguyen v. I.N.S., 533 U.S. 53, 70, 121 S. Ct. 2053, 2064 (2001) (a statute need not "be capable of achieving its ultimate objective in every instance" to pass intermediate scrutiny). For those reasons, we agree with our sister circuits that § 1432(a) is substantially related to protecting parental rights. See, e.g., Pierre, 738 F.3d at 53; Ayton, 686 F.3d at 339.

Finally, Levy argues that § 1432(a) unconstitutionally burdens his fundamental right to maintain a family unit. Levy's argument seems to proceed in two parts. First, Levy asserts that § 1432(a)(3) permits people like him, who have deep roots to the United States, to be "deported based on [their] father's gender and marital status." Contrary to Levy's assertion, he is being deported because he was

7

convicted of a deportable crime — not because of his "father's gender and marital status."  Second, Levy asserts that § 1432(a)(3) "can lead to a child's separation from their naturalized parent."  But by that logic, any statute that fails to rescue an alien from removal after he commits a deportable crime violates due process.  We decline to adopt such a rule.

**PETITION DENIED.**[3]

---

[3] Levy moved to file a supplemental brief on potential remedies following the Supreme Court's decision in <u>Sessions v. Morales-Santana</u>, 582 U.S. __, 137 S. Ct. 1678 (2017).  Because we affirm the BIA's final order, Levy's motion is **DENIED AS MOOT**.