[PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 22-11207

_____

Agency No. A042-465-197

SHELDON RALPH TURNER,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

Before JORDAN and LAGOA, Circuit Judges, and CANNON,[*] District Judge.

CANNON, District Judge:

This case of first impression requires us to decide a statutory question of derivative citizenship under former section 321(a) of the Immigration and Nationality Act (INA). 8 U.S.C. 1432 (1999). That section, repealed in 2000 but stipulated to govern the petition in this case, provides automatic citizenship under certain conditions to children born abroad to noncitizen parents.

Sheldon Turner petitions for review of an order by the Board of Immigration Appeals ("BIA") dismissing his appeal of an Immigration Judge's ("IJ") order of removal. The BIA determined that Turner did not derive citizenship from his mother's naturalization. It reasoned that the single parent derivative citizenship subsection on which Turner relied, former 8 U.S.C. § 1432(a)(3), imposes a continuing requirement of legal separation that must still exist at the time that all other conditions of derivative citizenship are satisfied. Exercising our independent judgment, we agree with that legal determination and thus deny Turner's petition. Turner's mother remained legally married to Turner's father at the time she naturalized and up to Turner's eighteenth birthday. Turner therefore did not derive automatic citizenship under former 8 U.S.C. § 1432(a)(3).

---

[*] The Honorable Aileen M. Cannon, United States District Judge for the Southern District of Florida, sitting by designation.

**I.**

The following facts are undisputed for purposes of this appeal.

Turner was born in Jamaica in 1981 to Desmond and Roslyn Turner, both Jamaican citizens. Desmond and Roslyn were married at the time of Turner's birth.[1] In 1987, Desmond and Roslyn divorced. About six months after the divorce, Roslyn married a U.S. citizen in Florida named M.C. Anderson. Two years later, in 1990, and at the age of eight, Turner was admitted to the United States as a lawful permanent resident.

Turner's mother, Roslyn, remained married to M.C. Anderson until their divorce in 1993. Roughly a year later in 1994, Roslyn remarried Desmond, Turner's father and Roslyn's former husband. Turner was twelve when his parents remarried.[2]

---

[1] There is no paternity dispute in this case or suggestion of an out-of-wedlock birth.

[2] The IJ made a factual finding that Turner's parents, Roslyn and Desmond, remarried in Jamaica in August 1994. The IJ based this determination on a marriage entry in an uncertified marriage registry as well as an I-130 Petition for Alien Relative submitted by Roslyn on behalf of Desmond in 2000. Turner did not stipulate to the remarriage of his parents at the immigration hearing. Importantly, however, Turner does not challenge the IJ's factual finding for purposes of our review or invite any evidentiary examination of that finding. *See Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009) (noting highly deferential substantial-evidence standard for review of the BIA's factual findings). He argues instead that, as a matter of law, accepting the remarriage for purposes of his petition, it did not disqualify him from obtaining derivative citizenship under former 8 U.S.C. § 1432. We therefore proceed as Turner has,

In 1999, after Turner's parents remarried, Turner's mother naturalized as a U.S. citizen. The naturalization certificate indicates Roslyn's marital status as married. Turner was seventeen at the time of his mother's naturalization. Two years later, in September 2001, Turner's father Desmond passed away.

In 2016, Turner was convicted in the United States District Court for the Southern District of Florida for possession with intent to distribute 500 grams or more of cocaine. That felony conviction—classified without dispute as an aggravated felony under 8 U.S.C. § 1101(a)(43)(B)—led the Department of Homeland Security ("Department") to serve Turner with a Notice to Appear ("NTA").

In August 2020, Turner moved to terminate removal proceedings. Turner argued that he derived U.S. citizenship based on his mother's naturalization in 1999, citing the conditions for automatic citizenship in former 8 U.S.C. § 1432. Under Turner's reading of the statute, even if his parents remarried before his mother naturalized and remained married at the point of her naturalization, the remarriage did not defeat his claim for derivative citizenship because there had been a legal separation between his parents in 1987. The Department opposed termination in a written response.

accepting the 1994 remarriage of Turner's parents as uncontested for purposes of our review, and treating this petition as raising a pure question of law.

The IJ held a final hearing in December 2020.[3]  In an oral decision reduced to writing, the IJ denied the motion to terminate, sustained the NTA, and ordered Turner's removal to Jamaica.  After making factual findings not contested in this appeal, the IJ explained that Turner did not derive citizenship from his mother when she naturalized in 1999 because she was married to Turner's father at the time of naturalization and hence did not satisfy the continuing legal-separation condition in 8 U.S.C. § 1432(a)(3).  The IJ reached this decision after interpreting the plain language of the statute and relying on the rationale of the statute as explained in *Levy v. U.S. Attorney General*, 882 F.3d 1364, 1368 (11th Cir. 2018).

Turner appealed unsuccessfully to the BIA, which dismissed his appeal via an unpublished written decision in March 2022.  The BIA began its inquiry with the text of the contested phrase: "[t]he naturalization of the parent having legal custody of the child when there has been a legal separation of the parents."  8 U.S.C. § 1432(a)(3).  That language, the BIA explained, raises the following question: is the condition requiring "legal separation of the parents" satisfied so long as the separation occurred at a "single point in time in the past," or does it impose a "continuing requirement

---

[3] The IJ held an initial hearing in November 2020 but continued it to afford the parties additional time to clarify evidentiary issues pertaining to Roslyn's remarriage and Desmond's death.  The Department then supplemented the record with a divorce judgment for Roslyn and Desmond dated September 1987; a death certificate reflecting Desmond's death in September 2001; and a visa application submitted by Roslyn on behalf of Desmond in 2000, prior to Desmond's death.

that must still exist at the time all other conditions of derivative citizenship are satisfied"? Acknowledging the linguistic possibility of either formulation, the BIA rejected Turner's interpretation as in conflict with the structure of the statute as a whole and with the "congressional objective of protecting the custodial and other parental rights of noncitizen parents."

Turner timely filed the instant petition for review. This decision follows.

## II.

The BIA issued its own opinion in this case without expressly adopting the IJ's decision, but the BIA relied in part on the IJ's decision. In this circumstance, we "review the IJ's opinion, to the extent that the BIA found that the IJ's reasons were supported by the record, and we review the BIA's decision, with regard to those matters on which it rendered its own opinion and reasoning." *Seck v. U.S. Atty. Gen.*, 663 F.3d 1356, 1364 (11th Cir. 2011) (internal quotation marks omitted).

We review questions of statutory interpretation de novo. *Edwards v. U.S. Att'y Gen.*, 97 F.4th 725, 734 (11th Cir. 2024).

## A.

We "begin[] where all such inquiries begin: with the language of the statute itself." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989). This requires us to interpret statutory language according to its plain meaning as understood within its statutory context. *See, e.g.*, *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 455

(2022); *Johnson v. United States*, 559 U.S. 133, 139 (2010) ("Ultimately, context determines meaning . . . ."); *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) (noting "the cardinal rule that a statute is to be read as a whole, since the meaning of statutory language, plain or not, depends on context" (internal citation omitted)).

All parties agree that the relevant statute governing Turner's removal challenge is 8 U.S.C. § 1432(a), a now-repealed provision of the INA. *Levy*, 882 F.3d at 1366 n.1 ("When a person claims derivative citizenship, the BIA applies the law in effect when the last material condition was met."); *Jaffal v. Dir. Newark New Jersey Field Off. Immigr. & Customs Enf't*, 23 F.4th 275, 282 (3d Cir. 2022).[4]

That section, entitled "Child born outside of United States of alien parents; conditions for automatic citizenship," provided as follows:

> (a) A child born outside of the United States of alien parents, or of an alien parent and a citizen parent who has subsequently lost citizenship of the United States, becomes a citizen of the United States upon fulfillment of the following conditions:
>
>      (1) The naturalization of both parents; or

---

[4] The parties agree that the last material condition in this case was Turner's mother's naturalization in 1999, at which time former section 8 U.S.C. § 1432 was in effect.

(2) The naturalization of the surviving parent if one of the parents is deceased; or

(3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if

(4) Such naturalization takes place while such child is under the age of eighteen years; and

(5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause (1) of this subsection, or the parent naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.

(b) Subsection (a) of this section shall apply to an adopted child only if the child is residing in the United States at the time of naturalization of such adoptive parent or parents, in the custody of his adoptive parent or parents, pursuant to a lawful admission for permanent residence.

8 U.S.C. § 1432, *repealed by* Child Citizenship Act of 2000, Pub. L. No. 106–395, § 103, 114 Stat. 1631, 1632.[5]

As the structure of former section 1432(a) indicates, the statute sets up three first-order categories with built-in conditions under which a child born outside the United States may derive automatic citizenship. Subsection (a)(1) covers the circumstance in which both parents naturalize and requires both parents' naturalization. 8 U.S.C. § 1432(a)(1). Subsection (a)(2) applies when "one of the parents is deceased" and the surviving parent naturalizes. *Id.* § 1432(a)(2) ("The naturalization of the surviving parent if one of the parents is deceased."). And subsection (a)(3)—the only scenario implicated here—is triggered upon "[t]he naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation." *Id.* § 1432(a)(3). Each of these scenarios has as its fulcrum "[t]he naturalization" of either (1) both parents, (2) the surviving parent, or (3) the separated, single parent.

---

[5] Former section 1432 was enacted in 1952 and underwent various amendments, none of which is relevant to the text at issue in this appeal. June 27, 1952, c. 477, Title III, ch. 2, § 321, 66 Stat. 245; Oct. 5, 1978, Pub. L. 95-417, § 5, 92 Stat. 918; Dec. 29, 1981, Pub. L. 97-116, § 18(m), 95 Stat. 1620; Nov. 14, 1986, Pub. L. 99-653, § 15, 100 Stat. 3658; Oct. 24, 1988, Pub. L. 100-525, § 8(l), 102 Stat. 2618.).

The statute then imposes two additional mandatory conditions. The child must be less than eighteen years old when the naturalization "takes place." *Id.* § 1432(a)(4). And the child must be residing in the United States with lawful permanent resident status "at the time of the naturalization." *Id.* § 1432(a)(5). These additional mandatory conditions are keyed to the moment of naturalization, and neither is challenged in this case: Turner was under eighteen in 1999 when his mother naturalized, and when she naturalized, Turner was residing in the United States pursuant to "a lawful admission for lawful permanent residence."[6]

This leaves for resolution the narrow issue of statutory interpretation presented by Turner's petition. All other necessary conditions being satisfied, does a child derive citizenship from a naturalizing parent through the single-parent subsection, former 8 U.S.C. 1432(a)(3), when the naturalizing parent is not legally separated from the child's other living parent at the time of the last material condition?

Agreeing with the IJ, the BIA answered that query in the negative. The BIA acknowledged that the statute's use of the present-perfect tense provided some textual grounding for Turner's linguistically possible reading. Ultimately, however, the BIA rejected Turner's interpretation, noting that the structure of the statute as a whole "assumes that the legal separation of the parents is

---

[6] The Department does not dispute that Turner's mother was his custodial parent.

a permanent, or at least [a] continuing state of affairs." The BIA also leaned on the implications of accepting Turner's reading on the parental rights of the non-citizen, non-naturalizing parent. If adopted, the BIA observed, a child would obtain derivative citizenship automatically through one parent alone, notwithstanding that parent's remarriage to the child's noncitizen parent prior to the child's eighteenth birthday. That outcome, the BIA explained, could extinguish the parental rights of a noncitizen parent who may not wish to have his child become a U.S. citizen—a result "expressly at odds" with Congress' decision to restrict single-parent derivative naturalization in a manner respectful of noncitizen parents' rights. *See Levy*, 882 F.3d at 1368 (citing *Pierre v. Holder*, 738 F.3d 39, 53 (2d Cir. 2013), and *Barthelemy v. Ashcroft*, 329 F.3d 1062, 1066 (9th Cir. 2003), as amended (June 9, 2003), *overruled on other grounds*).

Exercising our independent review of this statutory question, we agree with the BIA's interpretation of former section 1432(a)(3). Although Turner presents a grammatically possible interpretation of the phrase "has been a legal separation" when viewed in the abstract, the most natural construction of the provision is that it imposes a continuing requirement of separation that must still exist at the time all other conditions are fulfilled, rather than a static act satisfied by the fact of a prior legal separation.

We start with the text of the subsection itself. After referring to two prior scenarios of naturalization in subsections (a)(1) (two-parent naturalization) and (a)(2) (single-parent naturalization with

the other parent deceased), 8 U.S.C. §§ 1432(a)(1)–(2), Congress referred in subsection (a)(3) to "[t]he naturalization of the parent having legal custody of the child when there *has been a legal separation* of the parents." *Id.* § 1432(a)(3) (emphasis added).

Turner focuses almost exclusively on the use of "has been" in the present-perfect tense, arguing that it must be read to encompass the fact of a prior legal separation even if the separation does not continue to the last material condition (here, naturalization). This reading, Turner contends, is compelled by the present-perfect "has been" phraseology. He also asserts that nothing in the text of the statute supports a requirement of a continuing legal separation.

Congress' choice of verb tense can be significant in discerning a statute's meaning. *See Carr v. United States*, 560 U.S. 438, 448 (2010). In the case of the present-perfect tense, dictionaries and language manuals begin by describing the tense as referencing an act or a state that is "completed at the present time" or "at the time of speaking." *See Present perfect*, *Webster's Third New International Dictionary* (2002) ("of, relating to, or constituting a verb tense that is traditionally formed in English with *have* and that expresses action or state completed at the time of speaking"); *Present perfect*, *Merriam-Webster's Collegiate Dictionary* (11th ed. 2003) ("of, relating to, or constituting a verb tense that is formed in English with have and that expresses action or state completed at the time of speaking"); *Present perfect*, *Oxford English Dictionary* (2007) ("A tense denoting action that is completed at the present time. . . ."), https://perma.cc/EH6T-CMV5; *id.* ("They sometimes express it

by the first form of their present perfect tense, when the design is to intimate, that a thing has been doing for some time and is not yet finished."); *The Chicago Manual of Style* 268 (17th ed. 2017) (noting that the present perfect tense "denotes an act, state, or condition that is now completed or continues up to the present"); *Present perfect*, *American Heritage Dictionary of the English Language* (5th ed. 2018) ("The verb tense expressing action completed at the present time, formed in English by combining the present tense of have with a past participle").

Those sources then distinguish present-perfect from the past tense, explaining that the present-perfect usage can "refer[] to (1) a time in the indefinite past or (2) a past action that comes up to and touches the present." *The Chicago Manual of Style* 268 (17th ed. 2017). In other words, "sometimes [the present perfect tense] represents an action as having been completed at some indefinite time in the past . . . [b]ut sometimes, too, the present perfect indicates that an action continues to the present . . . ." Bryan Garner, *Garner's Modern American Usage* 802–03 (3d ed. 2009); *id.* (noting that "[e]ither of two qualities must be present for this tense [present perfect] to be appropriate: Indefiniteness of past time or a continuation to the present").

Accepting that the use of the present-perfect tense can, as a matter of pure semantics, refer to a time in the indefinite past *or* to a past action or state that continues into the present, *see Paresky v. United States*, 995 F.3d 1281, 1288 (11th Cir. 2021), the question becomes which of those meanings applies in this statutory context,

*see, e.g.*, *Pulsifer v. United States*, 601 U.S. 124, 133 (2024) (acknowledging a party's grammatically possible reading but rejecting it after examining the text in context).  Upon full review of the statute as a whole, we agree with the Department and the BIA that former section 1432(a)(3) imposes a continuing requirement of separation that must exist at the time that all other conditions of derivative citizenship are satisfied.  We reason as follows.

First, the complete structure of former section 1432(a) reveals that it treats naturalization as the principal event.  Starting from the top, "[a] child born outside the United States of alien parents . . . becomes a citizen . . . upon fulfillment of the following conditions."  8 U.S.C. § 1432.  What comes next are subsections (a)(1) through (a)(3), each separated by an "or," and all of which depend upon naturalization as the key moment—whether naturalization by both parents, naturalization by a surviving parent, or naturalization by a single parent.  *Id.* § 1432(a)(1)–(a)(3).  The statute then proceeds to impose additional mandatory conditions, or extras, related to lawful residency and minor age, both of which are tied expressly to the time of naturalization.  8 U.S.C. § 1432(a)(4)–(a)(5).  Subsection (a)(4), for example, requires the "naturalization [to] *take[] place while* such child is under the age of eighteen."  *Id.* § 1432(a)(4) (emphasis added).  Subsection (a)(5) requires that "[s]uch child is residing in the United States pursuant to a lawful admission for permanent residence *at the time of the naturalization.*"  *Id.* § 1432(a)(5) (emphasis added).  And subsection (b) extends derivative citizenship to adopted children, but only if the adopted

child "is residing in the United States *at the time of naturalization* of such adoptive parent or parents." *Id.* § 1432(b) (emphasis added).

In this manner, former section 1432 ensures that a child does not become vested with derivative citizenship unless all of the requisite "status markers" are fulfilled at the time the last material condition is met. Importantly, this does not mean that the events that bring about the requisite conditions must all occur simultaneously. But it does require that the conditions relevant to single-parent derivative citizenship—*i.e.*, naturalization of the single parent, custody by the single parent of the minor child, legal separation between the child's living parents, lawful permanent residence for the child, and the child's minor age—all be in effect at the time the last condition is met, which in the case of Turner is naturalization of his mother. It would be odd for Congress, having zeroed in so clearly on naturalization as the statutory fulcrum, to break from that approach in subsection (a)(3) by splitting naturalization temporally from the state of legal separation. Instead, the more natural construction is that "legal separation" as used in that manner contemplates a continuing status that must touch the point of naturalization.

Second, Congress' use of the present-perfect tense to refer to legal separation naturally aligns with the statute's focus on the conditions in existence at the time of naturalization. Recall that the particular language in the contested subsection states: "[t]he *naturalization* of the parent *having legal custody* of the child when *there has been a legal separation* of the parents." 8 U.S.C. § 1432(a)(3).

Read holistically, the phrases "having legal custody" and "when there has been a legal separation" both connote the state of affairs at the moment of naturalization. In other words, does the naturalizing parent have legal custody of the child, and is that parent legally separated from the noncitizen parent at the moment of naturalization? The answers to these questions in the present tense are what matter for citizenship eligibility—not the expired existence of those conditions at some point in the past.

Third, Turner's reading of subsection (a)(3) creates unnecessary and unexplained tension with subsection (a)(1). Subsection (a)(1) applies, as noted, when both parents naturalize, as compared to the single-parent scenario reflected in subsection (a)(3). If Turner's parents were married at the time of naturalization—a fact unchallenged for purposes of this appeal—then the clearly applicable provision between the options of (a)(1), (a)(2), and (a)(3) would be subsection (a)(1), not (a)(3). *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction" that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (internal quotation marks omitted). We are reluctant to adopt an interpretation that weakens the force of a neighboring subsection, namely, subsection (a)(1).

Fourth, if an action is "wholly in the past—and the time is relatively definite—the simple past is called for." Bryan Garner, *Garner's Modern American Usage* 802–03 (3d ed. 2009). So too here. Had Congress been comfortable vesting derivative citizenship

based on a moment-in-time, expired prior separation as suggested by Turner, it seems the more natural method of conveying that choice would have been to use the simple past tense—for example by referring to "naturalization . . . where there *was* a legal separation of the parents."[7]   But Congress used the phrase "*has been* a legal *separation*," which we think captures a continuing requirement of a parent's legally separated *status* carrying forward to the moment of naturalization.   In addition, elsewhere in the statute, Congress referred to fixed and immutable events using the past tense, for example, by referring to an out-of-wedlock birth or to the death of a parent.   8 U.S.C. § 1432(a)(2)–(a)(3) (referencing "if the child *was born* out of wedlock" and "if one of the parents *is deceased*") (emphasis added).   "Legal separation" is not of that same immutable variety; it connotes a status or condition that is not frozen in time, and thus, by its nature requires an assessment of the existence or non-existence of the status at the relevant statutory moment, which in the case of subsection (a)(3) (and also (a)(1) and (a)(2)) is naturalization.

Finally, although we have not previously addressed the narrow question presented in this petition, the BIA's interpretation accords with our decision in *Levy v. U.S. Att'y Gen.*, 882 F.3d 1364

---

[7] Tellingly, Turner's defense of his statutory position led him at oral argument to frame the statutory question by asking whether there "had been" a legal separation.   Oral Argument Audio at 8:30–8:50 (asking whether, "at the moment of naturalization, was it true that there *had been* a legal separation of the parents?") (emphasis added).

(11th Cir. 2018), and with other circuits' understanding of the legal-separation requirement in former section 1432(a)(3).

In *Levy*, we addressed a gender-and-legitimacy based constitutional challenge to former section 1432. *Id.* at 1367. In rejecting the challenger's misreading of the statute, we had occasion to describe its requirements. In doing so, we identified the three naturalization-specific subsections, 8 U.S.C. § 1432(a)(1)–(a)(3), in a manner consistent with legal separation as a continuing condition. We stated as follows: "[B]oth parents are naturalized; the surviving parent is naturalized; or both parents legally separate and the one having legal custody is naturalized." *Levy*, 882 F.3d at 1367 (omitting internal citations to 8 U.S.C. § 1432(a)(1)–(a)(3)). This implicit present-tense understanding continued later in the discussion of subsection (a)(3) specifically, where we observed that it "permits the naturalizing parent's rights to trump the alien parent's only when the couple *is* legally separated and the naturalizing parent *has* legal custody." *Id.* at 1368 (emphases added).

To be sure, *Levy* did not present the precise issue of statutory interpretation we confront here. But nothing in Turner's arguments or in the text of the statute leads us to question our prior breakdown of the marriage-separation distinction as one implicitly requiring a continuing legal separation touching into the moment of naturalization.

*Levy* is also instructive in its explanation of the textually drawn rationale underlying the single-parent subsections in (a)(2) and (a)(3). As we stated in *Levy*, "[b]ecause derivative

naturalization automatically changes a child's citizenship and can effectively extinguish an alien's parental rights, Congress limited single parent derivative citizenship to instances where it is fair to assume the alien parent was out of the picture." *Id.* at 1368; *id.* ("In both situations, it is fair to assume that the alien parent has a lesser interest in the child's citizenship."). Our decision in *Levy* thus recognizes that Congress in former subsections 1432(a)(2) and (a)(3) limited derivative citizenship to situations in which the interests of the noncitizen parent are decidedly less. That simply is not the case when the naturalizing parent remains married to the noncitizen parent. Indeed, the two-parent naturalization scenario in subsection (a)(1) reveals as much by requiring both parents' naturalization. 8 U.S.C. § 1432(a)(1). We decline to adopt a reading that would undermine the textually discerned purpose of the statute as already explained in a prior decision addressing the same statute.

Other circuits have also treated the legal-separation requirement as a condition that must be in place by the time of naturalization.

In *Joseph v. Holder*, 720 F.3d 228 (5th Cir. 2013), the Fifth Circuit rejected a claim of derivative citizenship under former section 1432(a)(3) because the petitioner's parents—as determined by a vacated divorce order in state court—were not legally separated *when the petitioner's mother naturalized*. *Id.* at 230–31.

Similarly, in *Jaffal v. Dir. Newark New Jersey Field Off. Immigr. & Customs Enf't*, 23 F.4th 275 (3d Cir. 2022), the Third Circuit reversed a grant of summary judgment on the issue of separation,

finding material questions of fact based on the particulars of family law in the petitioner's home country. But the court clearly anchored its entire analysis in an understanding that legal separation—and legal custody—had to exist *at the time of the single parent's naturalization*. *Id.* at 282–88 (citing *Espichan v. Att'y Gen. of United States*, 945 F.3d 794 (3d Cir. 2019), and *Espichan v. Att'y Gen. of United States*, 945 F.3d 794 (3d Cir. 2019)). And, years earlier in *Jordon v. Att'y Gen. of U.S.*, 424 F.3d 320 (3d Cir. 2005), the Third Circuit reiterated that a child seeking to establish derivative citizenship through former section 1432(a) must prove that his parent was naturalized "'*after* a legal separation'" from the other parent. *Id.* at 330 (emphasis added) (quoting *Bagot v. Ashcroft*, 398 F.3d 252, 257 (3d Cir. 2005)).

Finally, the Ninth Circuit in *Minasyan v. Gonzales*, 401 F.3d 1069 (9th Cir. 2005)—again in the context of former section 1432(a)—observed without difficulty that a child seeking derivative citizenship under that provision must prove that his parents were legally separated "at the time of his mother's naturalization." *Id.* at 1076.

Turner has not offered any decision that has adopted his particular understanding of subsection (a)(3) or suggested that legal separation under that provision need not exist at the time of naturalization.[8]

---

[8] Turner's citation to *Barrett v. United States*, 423 U.S. 212 (1976), does not point us in a different direction. *Barrett* concerned a defendant's challenge to criminal liability under 8 U.S.C. § 922(h), which, in simple terms, prohibits certain

**B.**

The dissent reaches a different conclusion, determining that the requirements of the single-parent derivative citizenship pathway can be satisfied by a child whose naturalizing parent is legally married to the child's other parent at the time of naturalization. Dissent Op. at 6–9. Respectfully, we disagree with this anomalous interpretation, which is not meaningfully rooted in the text of the statute but relies instead on two prior decisions of the BIA, neither

---

categories of persons from possessing a firearm "which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(h)(2). The defendant claimed that his conduct did not violate the statute because the firearm he received had traveled from one state to another before he received it, suggesting that only "direct interstate receipt" would trigger liability. The Supreme Court disagreed, finding no ambiguity in Congress' proscription of a felon's receipt of any firearm that "has been" shipped in interstate commerce, regardless of whether the recipient participated in its prior movement. In reaching its decision, the Supreme Court made mention of the statute's use of the present-perfect tense, noting that such construction "denot[ed] an act that has been completed." *Barrett*, 423 U.S. at 216. We see no discordancy between the explanation of the present-perfect tense in *Barrett* as relates to the interstate-commerce element in 18 U.S.C. § 922 and the BIA's interpretation of legal separation in former section 1432(a). As noted, the present-perfect tense "denotes an act, state, or condition that is now completed or continues up to the present." *The Chicago Manual of Style* 268 (17th ed. 2017). How the construction maps on to a given statute depends on the particular context presented. And the statutory context here does not support Turner's one-time, backwards-looking view of legal separation. Nor do we see a reason why Congress—in deciding whether to confer derivative citizenship—would view as dispositive the existence of a separation in the past that did not carry forward to the key moment that matters for purposes of single-parent derivative citizenship under this statute: naturalization.

of which addresses the statutory question at issue.  *See Matter of Baires-Larios*, 24 I. & N. Dec. 467 (BIA 2008); *Matter of Douglas*, 26 I. & N. Dec. 197 (BIA 2013).

Under *Skidmore*, a court can look to an agency's interpretation for guidance depending upon the "thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).  The Supreme Court's recent decision in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), overruling *Chevron* deference did not disturb *Skidmore*, although it clarified the areas in which *Skidmore* has tended to serve an interpretive function.  Where "a particular statute empower[s] an agency to decide how a broad statutory term applie[s] to specific facts found by the agency," there exists a discernable basis to seek guidance from the agency given such interpretive authority.  *Loper Bright Enter.*, 144 S. Ct. at 2259 (citing *Gray v. Powell*, 314 U.S. 402 (1941) and *NLRB v. Hearst Publications, Inc.*, 322 U.S. 111 (1944); *id.* at 2263 (noting statutes with express delegations of interpretative authority).  Similarly, resort to *Skidmore* may be warranted where an agency makes a "factbound determination" about the meaning of a statutory term, *id.* at 2259; where Congress gives an agency the power to "'fill up the details' of a statutory scheme," *id.* at 2263 (quoting *Wayman v. Southard*, 10 What. 1, 43 (1825)); where an agency's "specialized experience" and "informed judgment" work to lend persuasive power to its interpretations, *Skidmore*, 323 U.S. at 139–40; or where the term itself leaves the agency "'with

flexibility,'" *Loper Bright Enter.*, 133 S. Ct. at 2263 (quoting *Michigan v. EPA*, 576 U.S. 743, 752 (2015)). *See also Perez v. Owl, Inc.*, 110 F.4th 1296, 1307–08 (11th Cir. 2024) (applying *Skidmore* to the Department of Labor's eighty-year long, consistent position about the meaning of the term "regular rate" in the Fair Labor Standards Act).

We fail to see a basis to engage in *Skidmore* review to resolve Turner's appeal. Turner's appeal does not rest on an agency's fact-bound determination about a statutory term. It does not implicate the BIA's "specialized experience." *Skidmore*, 323 U.S. at 139. And Turner himself does not advocate for *Skidmore* review. This is unsurprising, as the matter before us presents a pure, narrow question of law prime for judicial resolution using interpretive tools to resolve ambiguity. *Loper Bright Enter.*, 144 S. Ct. at 2266.

In any case, even assuming *Skidmore* guidance could play some role in Turner's appeal, there is no interpretation of the BIA, longstanding or otherwise, that actually governs the disputed statutory question at issue. As the BIA explained, this case concerns whether the statutory phrase "has been a legal separation of the parents" in former section 321(a)(3) is met by a legal separation at a singular point in time in the past or whether it imposes a continuing requirement that must still exist at the time that all other conditions of derivative citizenship are satisfied. On that question of law, the BIA has never spoken—until it decided Turner's appeal.

Nor did the BIA resolve the instant statutory issue in *Matter of Baires-Larios*, 24 I. & N. Dec. 467 (BIA 2008), or *Matter of Douglas*,

26 I. & N. Dec. 197 (BIA 2013)—the two BIA decisions on which the dissent relies for persuasive weight. In *Baires-Larios*, the BIA addressed the following sequence of events: a child's foreign-born parents divorced; the child's father became a naturalized United States citizen; the child's mother relinquished legal custody of the child; and the child (still under the age of eighteen) entered the United States and acquired permanent residency. With that set of facts, the BIA found derivative citizenship because all of the ingredients of derivative citizenship were in effect when the last material condition was met—that is, when the child entered the country and acquired residency. A similar fact pattern arose in *Matter of Douglas*, 26 I. & N. Dec. 197 (BIA 2013): the child entered the United States as lawful permanent resident; his mother naturalized; and his parents divorced, before the child's eighteenth birthday. There again, all of the statutory conditions of former section 321(a) were in effect when the last material condition was fulfilled.

Neither *Baires-Larios* nor *Douglas* directly presents the situation we have here: a claim for derivative citizenship through the single-parent provision despite the purported "single parent" remaining legally married to the child's other parent when the last material condition was fulfilled. Nor does either decision address the meaning of the contested phrase here ("when there has been a legal separation of the parents") or really engage in statutory analysis at all. Accordingly, whatever interpretive weight is to be accorded to the BIA's decisions in *Baires-Larios* or *Douglas*—and neither decision is challenged here—we do not agree that they offer a longstanding or persuasive view entitled to weight in resolving the

issue raised in Turner's appeal. In fact, after expressly requesting and receiving supplemental briefing from the parties concerning *Baires-Larios* and *Douglas*, the BIA indicated that both decisions "supported" the IJ's view in Turner's case. We think it unusual to deploy *Skidmore* review in this circumstance, where the very agency at issue has already told us in this proceeding that it considered those decisions and does not find them inconsistent with its view on the statutory question presented.[9]

The dissent also incorrectly characterizes our decision as deviating from textualist principles. According to the dissent, "there is no 'plain meaning' (i.e., no linguistically obvious) solution to the statutory question before us." Dissent Op. at 3. But statutory language can have a "plain meaning"—and a court can discern its plain meaning—even where the text is not susceptible to a "linguistically obvious" solution, and even where, as here, the text presents more than one possible construction. *See ECB USA, Inc. v. Chubb Ins. Co. of New Jersey*, 113 F.4th 1312, 1326 (11th Cir. 2024) (discerning the plain meaning of contractual language despite existence of two possible readings) (citing *Pulsifer*, 601 U.S. at 141–142 ("The two possible readings thus reduce to one . . . .")). Former section 1432(a)(3) presents such a scenario given its use of the present perfect verb

---

[9] To the extent there exists arguable tension between the BIA's decision in Turner's case and its prior decisions in *Baires-Larios* or *Douglas*, the BIA expressed no such tension in its opinion in this appeal, as noted. And more fundamentally, the judicial task here is to determine the best reading of the contested statutory phrase and to resolve ambiguity on a pure question of law. *Loper Bright Enter.*, 144 S. Ct. at 2266.

tense. Even so, the existence of a linguistically possible interpretation does not mean the language at issue lacks a plain meaning as gleaned following judicial study. Nor is it the case, as the dissent suggests, that former section 1432(a)(3) presents a case of total ambiguity because the statute does not delineate a precise sequence of operations to derive citizenship. Dissent Op. at 4. Courts construe the plain meaning of statutes even where, as here, Congress "'could have expressed itself more clearly.'" *Pulsifer*, 601 U.S. at 138 (quoting *Torres v. Lynch*, 578 U.S. 452, 472 (2016)). And in any event, we do not read the dissent as itself grappling with the text of the statute or with the various textual indicators supporting the Department's interpretation.

Finally, the dissent characterizes our decision as requiring naturalization and legal separation to "take place simultaneously." Dissent Op. at 2. Not so. We, like the BIA, hold that the "legal separation" referenced in former section 1432(a)(3) imposes a continuing requirement that must still exist at the time that all other conditions of derivative citizenship are satisfied. That conclusion is sufficient to resolve this appeal.

All told, the dissent adopts a reading of the single-parent subsection in former section 1432(a)(3) that permits a child to acquire derivative citizenship through a parent who remains married to the child's other parent at the time of naturalization. Although semantically possible, we do not believe it best accords with the statute when read in context. Nor does the available circuit precedent interpreting former section 1432(a)(3) align with that reading.

## C.

The phrase "has been a legal separation of the parents" in former section 1432(a)(3) refers to a legal separation that must still exist at the time all other conditions of derivative citizenship are satisfied. Because Turner's mother was married to Turner's living father at the time of the last material condition (here, naturalization) and remained married to Turner's father up to and including Turner's eighteenth birthday, the BIA correctly dismissed Turner's appeal.

**PETITION DENIED**.

JORDAN, Circuit Judge, Dissenting:

With respect, I dissent.  In my view, derivate citizenship under the former 8 U.S.C. § 1432(a)(3) does not require that the parent with legal custody of the child be naturalized while she is legally separated from her spouse.

## I

A subsection of the immigration statute at issue in this case, the now-repealed 8 U.S.C. § 1432(a), provides in relevant part that a person born outside of the United States to non-citizen parents "becomes a citizen of the United States" if a number of conditions are satisfied.  The first is the "naturalization of the parent having legal custody of the child when there has been a legal separation of the parents." § 1432(a)(3).  The second is that "naturalization takes place while such child is under the age of eighteen." § 1432(a)(4). And the third is that the "child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent . . . naturalized under clause . . . (3) of this subsection or the naturalization, or thereafter begins to reside permanently in the United States while under the age of eighteen years." § 1432(a)(5).  Here the second and third conditions were satisfied: Mr. Turner was 17 when his mother was naturalized and he was living in the United States as a lawful permanent resident at the time of her naturalization.

Only the first condition, then, is at issue.  Because Mr. Turner's parents had remarried at the time the mother was naturalized, the statutory question is the meaning of the phrase

"naturalization of the parent having legal custody of the child *when there has been* a legal separation of the parents." § 1432(a)(3) (emphasis added). Do the naturalization of the parent having legal custody and the legal separation of the parents have to occur simultaneously? To answer this question, we must "ask whether the time of [the legal separation] matters." *Fla. Dep't of Revenue v. Picadilly Cafeterias, Inc.*, 554 U.S. 33, 53 (2008) (Breyer, J., dissenting).

## II

For the majority, the naturalization of the parent having legal custody is the relevant § 1432(a)(3) event, and it must occur at a point in time when the parents are legally separated. In other words, naturalization and legal separation must take place simultaneously. This result, the majority says, aligns with a holistic view of the statutory text, which ensures that a child does not become vested with derivative citizenship unless all of the requisite 'status markers' are fulfilled at the time the last material condition is met. The majority reasons that, if Congress had wanted to vest derivative citizenship based on a past legal separation that was no longer in effect, it would have said so expressly and used the simple past tense to do so.

The majority's reading is a plausible one, but it is not the only plausible one. If fact, the opposite of what the majority says about legislative drafting choices is also true. It can just as easily be said that if Congress wanted to require that naturalization and legal separation occur simultaneously, it could have done so expressly. For example, it could have used the phrase "naturalization of the

parent having legal custody of the child *at a time when there is* a legal separation of the parents," or "naturalization of the parent having legal custody of the child *while there is* a legal separation of the parents."  It did not do either.

Contrary to what the majority says, there is no "plain meaning" (i.e., no linguistically obvious) solution to the statutory question before us. Indeed, the majority acknowledges that Mr. Turner's reading of the statutory language is grammatically reasonable and permissible.  *See also Barrett v. United States*, 423 U.S. 212, 216 (1976) (concluding that the phrase "has been," as used in a criminal firearm statute, was a present perfect tense verb which "denot[ed] an act that has been completed").[1]

For me the "statutory language itself is perfectly ambiguous," *Picadilly Cafeterias*, 554 U.S. at 54 (Breyer, J., dissenting), as the phrase "naturalization of the parent having legal custody of the child when there has been a legal separation of the parents" can be reasonably read to mean two different things.  And, as relevant here, § 1432(a)(3) is completely silent on the order in which the

---

[1] The Third and Ninth Circuits have apparently read § 1432(a)(3) to require that the naturalization take place after or during the legal separation, but they have not provided any textual or other analyses for their respective interpretations.  *See, e.g., Jordon v. U.S. Att'y Gen.*, 424 F.3d 320, 330 (3d Cir. 2005) (relying on *Bagot v. Ashcroft*, 398 F.3d 252, 257 (3d Cir. 2005), for the proposition that under § 1432(a)(3) the person claiming derivative citizenship must show "that his [parent] was *naturalized after a legal separation* from his [other parent]"); *Minasyan v. Gonzales*, 401 F.3d 1069, 1076 (9th Cir. 2005) ("The critical question, therefore, is whether, at the time of his mother's naturalization, 'there ha[d] been a legal separation of the parents.'") (quoting § 1432(a)(3)).

statutory conditions must be satisfied. *See Negusie v. Holder*, 555 U.S. 511, 518 (2009) (finding statutory language ambiguous: "On that point the statute, in its precise terms, is not explicit. Nor is this a case where it is clear that Congress had an intention on the precise question at issue.").

One of our prior decisions has some language about congressional intent that supports the majority's reading. *See Levy v. U.S. Att'y Gen.*, 882 F. 3d 1364 (11th Cir. 2018). In that case, which addressed a claim that § 1432 unconstitutionally discriminated on the basis of gender and legitimacy, we explained that "[b]ecause derivative naturalization automatically changes a child's citizenship and can effectively extinguish an alien's parental rights, Congress limited single parent derivative citizenship to instances where it is fair to assume the alien parent was out of the picture." *Id*. at 1438 (internal citations omitted). Though *Levy* does not control here, the majority understandably relies on it in part. But the reason why *Levy* is relevant is legislative purpose can be used to figure out the ambiguity in §1432(a)(3). *See, e.g.,* Robert A. Katzmann, Judging Statutes 31–32 (2014) ("When the text is ambiguous, a court is to provide the meaning that the legislature intended. In that circumstance, the judge gleans the purpose and policy underlying the legislation and deduces the outcome most consistent with those purposes.").[2]

---

[2] As some commentators have noted, "textualist Justices regularly venture beyond the bounds of neutral, objective analysis to speculate and make judgment calls about Congress's purpose, intent, and the sensibility of particular

Despite the language in *Levy*, I come to a different conclusion than the majority.  I explain my reasoning below.

### III

Mr. Turner bears the burden of proving his "eligibility for citizenship in every respect." *Berenyi v. Dist. Dir., INS*, 385 U.S. 630, 637 (1967).  And though any "doubts should be resolved in favor of the United States and against the claimant," *id.* (internal quotation marks and citation omitted), I think Mr. Turner obtained derivative citizenship.

### A

The Supreme Court's recent decision in *Loper Bright Enterprises v. Raimondo*, 144 S.Ct. 2244, 2273 (2024), overruled *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).  As a result, federal courts no longer defer, as *Chevron* once required, to permissible agency interpretations of ambiguous statutory language.  But *Loper Bright* did not affect *Skidmore v. Swift & Co.*, 323 U.S. 134, 139–40 (1944), which explained that the "interpretations and opinions" of an agency, "made in pursuance of official duty" and "based upon . . . more specialized experience," can "constitute a body of experience and informed judgment to which

---

interpretive choices.  In other words, textualism in practice often involves just as much judicial discretion and guesswork as does purposivism."  Anita S. Krishnakumar, *Backdoor Purposivism*, 69 Duke L.J. 1275, 1330–31 (2020).  The majority, I think, is doing the same thing here by relying on *Levy* and its understanding of legislative purpose.

courts and litigants may properly resort for guidance," even on legal questions. *See Loper Bright*, 144 S.Ct. at 2259. Under *Skidmore*, the "weight of such [an agency] judgment in a particular case" will "depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore*, 323 U.S. at 140.

*Skidmore* matters here because the BIA has examined § 1432(a) in published, precedential decisions. And it has held, despite contrary decisions from the Third Circuit, that the conditions in subsections (a)(3), (a)(4), and (a)(5) do not have to occur at the same time. Given the *Skidmore* factors, it seems to me that these BIA decisions—summarized below—are thorough and persuasive and therefore entitled to weight.

In *Matter of Baires-Larios*, 24 I. & N. Dec. 467 (BIA 2008), an individual born in El Salvador in 1976 to Salvadorian parents moved to cancel her removal on the ground that she had derived U.S. citizenship under § 1432(a)(3)–(5). The parents were divorced in 1978, and the father became a naturalized U.S. citizen in 1989. The individual came to the United States in 1990 at the age of 14, as a lawful permanent resident, to live with her father, who had by then purportedly obtained legal custody. The immigration judge ruled that the individual could not derive citizenship under § 1432(a)(3)–(5) because she was not in the custody of her father on the date of his naturalization.

Despite some Third Circuit cases to the contrary, *e.g., Jordon*, 424 F.3d at 330, the BIA ruled that the individual derived U.S. citizenship if she could prove she "came into her father's legal custody prior to reaching her 18th birthday, even if she was not in his custody on the date of his naturalization." 24 I. & N. Dec. at 468–69. In so doing, the BIA relied in part on a 2008 Field Manual issued by U.S. Citizenship and Immigration Services which explained that because "'the order in which the requirements [of § 1432(a)] were satisfied is not stated in the statute, so long as the applicant meets the requirement[s] of the statute before age 18 the applicant derives U.S. citizenship.'" *Id.* at 470 (quoting U.S. Customs and Immigr. Servs., Dep't of Homeland Security, Adjudicator's Field Manual, § 71.1(d)(2) (Feb. 2008)).

Five years later, in *Matter of Douglas*, 26 I. & N. Dec. 197 (BIA 2013), the BIA reaffirmed *Baires-Larios* in a factual scenario that somewhat mirrors Mr. Turner's case. In *Douglas*, the individual who claimed derivative citizenship under § 1432(a) was born in Jamaica in 1976 to Jamaican parents. The individual entered the United States in 1981 as a lawful permanent resident with his married parents. His mother was naturalized in 1988, when the parents were still married.[3]

The parents divorced two years after the mother's naturalization, when the individual was 14. The immigration judge rejected the individual's claim of derivative citizenship, apparently

---

[3] Like the mother in *Douglas*, Mr. Turner's mother was naturalized at a time when she was still married.

because the mother obtained custody after she was naturalized. The BIA, however, sustained the individual's appeal.

The BIA again rejected the Third Circuit's view that the naturalization of the parent having custody has to take place *after* the legal separation of the parents. The BIA explained that the word "when" has "various meanings in different contexts" and was ambiguous as used in § 1432(a)(3). *See id.* at 199–201. Then, reviewing the drafting history of the statute, it concluded that "Congress' intent was to accord a child [U.S.] citizenship, regardless of whether the naturalized parent acquired legal custody of the child before or after the naturalization, so long as the statutory conditions were satisfied before the child reached the age of 18." *Id.* at 201.

Taken together, *Baires-Larios* and *Douglas* stand for the proposition that the statutory conditions set out in § 1432(a)(3)—a parent having custody of the child, that parent obtaining naturalization, and the parents being legally separated—do not have to occur simultaneously or in any particular sequence as long as they all take place before the child is 18. *See Tineo v. Att'y Gen.*, 937 F.3d 200, 207 n.6 (3d Cir. 2019) (citing *Baires-Larios* and explaining that USCIS "has determined that the order of events does not matter, so long as all events occur before the child's eighteenth birthday"). As far as I can tell, immigration treatises view those two BIA decisions as stating the governing law. *See* Daniel Levy, U.S. Citizenship and Naturalization Handbook § 5:3 n.11, n.12 (May 2024 update); 3 Shane Dizon & Pooja Dadhania, Immigration Law Service 2d

§ 14:209 n.4 (May 2024 update); Maria Baldini-Potermin, Immigration Trial Handbook § 5:14 n.5 (Apr. 2022 update).

Under *Baires-Larios* and *Douglas*, which I find persuasive under *Skidmore*, Mr. Turner arrived derivative citizenship even though his parents were not legally separated at the time of his mother's naturalization. All that matters is that those two conditions existed at some point before Mr. Turner was 18.

**B**

The majority rejects *Baires-Larios* and *Douglas* in part because it says that "Congress has not empowered the BIA to decide the statutory question before us." Maj. Op. at 23. I believe the majority is mistaken on this point.

A provision of the INA states that

> [t]he Secretary of Homeland Security shall be charged with the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens, except insofar as this chapter or such laws relate to the powers, functions, and duties conferred upon the President, Attorney General, the Secretary of State, the officers of the Department of State, or diplomatic or consular officers: *Provided, however,* That determination and ruling by the Attorney General with respect to all questions of law shall be controlling.

8 U.S.C. § 1103(a)(1). As the Supreme Court has put it, "Congress has charged the Attorney General with administering the INA, and a 'ruling by the Attorney General with respect to all

questions of law shall be controlling.'" *Negusie v. Holder*, 555 U.S. 511, 516-17 (2009) (quoting § 1103(a)(1)).

The Attorney General is statutorily authorized to delegate his authority under the INA, *see* 8 U.S.C. § 1103(g)(2), and has, in turn, delegated part of that authority to the BIA by regulation:

> The Board shall function as an appellate body charged with the review of those administrative adjudications under the Act that the Attorney General may by regulation assign to it. The Board shall resolve the questions before it in a manner that is timely, impartial, and consistent with the Act and regulations. In addition, the Board, through precedent decisions, shall provide clear and uniform guidance to DHS, the immigration judges, and the general public on the proper interpretation and administration of the Act and its implementing regulations.

8 C.F.R. § 1003.1(d)(1). *See Negusie*, 555 U.S. at 517 ("The Attorney General, in turn, has delegated to the BIA the 'discretion and authority conferred upon the Attorney General by law' in the course of 'considering and determining cases before it.'") (some internal quotation marks omitted); *Edwards v. U.S. Atty. Gen.*, 97 F. 4th 725, 735 (11th Cir. 2019) (explaining that the "Attorney general has delegated" his authority to decide legal questions arising under the INA "to the [BIA]").

When the BIA decided *Baires-Larios* and *Douglas* in an adjudicative capacity, it was acting pursuant to authority properly

delegated by the Attorney General. Those decisions, therefore, are entitled to *Skidmore* deference.

**IV**

Mr. Turner obtained derivative citizenship under § 1432(a)(3)–(5) because all of the statutory conditions were satisfied before he turned 18. First, his mother—who had legal custody of him for a period of time—was naturalized. Second, his parents at one point became legally separated. Third, he was 17 when his mother was naturalized and when he was residing in the United States as a lawful permanent resident. All of these things took place before he was 18, and the fact that his parents' separation pre-dated his mother's naturalization does not matter. *See Baires-Larios*, 24 I. & N. Dec. at 468–70; *Douglas*, 26 I. & N. Dec. at 200–01.